S T Bunn Construction Co., Inc. (S T Bunn), general contractor, entered into a contract with the State Highway Department to perform certain paving work on Project No. IR-59-1(168)27 (project) in Greene County, Alabama.
In compliance with § 39-1-1, Code 1975, also known as the Alabama Public Works Act, S T Bunn obtained a payment bond from American Casualty Company of Reading, Pennsylvania (American Casualty). As surety, American Casualty obligated itself, jointly and severally, to promptly pay all persons supplying materials for or in the construction of the project.
S T Bunn subsequently entered into a subcontract with Al Pennington Contractor, Inc. (Pennington), in which Pennington agreed to furnish and install pavement marking materials on the project. Pennington then entered into an agreement with Cataphote, Inc. (Cataphote), in which Pennington ordered from Cataphote 28,000 pounds of white thermoplastic pavement striping materials and 16,000 pounds of yellow thermoplastic pavement striping materials (materials), for a total cost of $15,662.40. Pennington was to provide Cataphote with shipping instructions, the name of the general contractor, the project number, and the project location. Pennington later provided Cataphote with the S T Bunn project number and location and instructed Cataphote to deliver the materials to S T Bunn's asphalt plant off Highway I-59 North, which Cataphote understood to be at or near the project site.
Pennington did not pay Cataphote for the materials. As a result, Cataphote sent a certified letter to S T Bunn and American Casualty in which Cataphote notified S T Bunn and American Casualty of Pennington's nonpayment and demanded, pursuant to S T Bunn's and American Casualty's obligation under the payment bond, payment of the $15,662.40 that Pennington owed Cataphote.
S T Bunn paid Cataphote $8,395.45 plus interest of $169.74, for a total of $8,565. 19, for 14,590 pounds of white thermoplastic materials and 10,050 pounds of yellow thermoplastic materials. S T Bunn claimed that these figures represented the quantities of thermoplastic materials furnished by Cataphote which were actually used on the project.
After making this payment to Cataphote, S T Bunn disclaimed any further liability to Cataphote for the remaining $7,266.95 that was still owed by Pennington. S T Bunn refused to pay the remaining amount, because it claimed that those materials were not utilized on its project and were, in fact, diverted by Pennington to other projects. In addition, S T Bunn claimed that Cataphote, upon reasonable inquiry, could have ascertained that Pennington ordered more materials than its subcontract with S T Bunn required.
Cataphote filed a complaint in which it claimed that pursuant to § 39-1-1, Code 1975, it was entitled to recover $7,266.95 from S T Bunn and American Casualty for the materials that Pennington ordered but that were allegedly not used on the project, and reasonable attorneys' fees. S T Bunn and American Casualty filed an answer in which they denied that they were obligated to pay for the materials ordered by Pennington that were not used on the project.
Cataphote filed a motion for summary judgment in which it asserted that, based upon the project information provided by Pennington, it reasonably believed in good faith that all of the materials ordered by Pennington were intended for use on the project. Cataphote also asserted that Pennington never advised it that some of the materials were to be used on other projects. As a result, Cataphote asserted that it neither had knowledge of nor consented to any diversion by Pennington of some of the materials to other projects. Cataphote also requested reasonable attorneys' fees.
S T Bunn and American Casualty also filed a motion for summary judgment. Attached to this motion was the affidavit of Terry Bunn, President of S T Bunn. Mr. Bunn stated that 14,590 pounds of white thermoplastic paint and 10,050 pounds of yellow plastic paint were used on the project and that S T Bunn paid for the materials *Page 1327 
that were used on the project. Mr. Bunn also stated that, to his knowledge, the remainder of the paint was not delivered to the project site. A brief in opposition to Cataphote's motion for summary judgment was also filed, contending that the paint in question was not delivered to the project site, not used on the project, and not covered by the bond. It further contended that Cataphote cannot
 "blindly deliver huge quantities of products to a subcontractor under the guise of a bond when any reasonable inquiry would reveal that the products could not possibly be utilized for that project. There has to be a measure of good faith, and . . . [Cataphote] should not recover for any materials . . . not utilized on the project or delivered to the project site."
The trial court granted Cataphote's motion for summary judgment and denied S T Bunn and American Casualty's motion for summary judgment. The trial court assessed damages against S T Bunn and American Casualty in the amount of $7,669.97, inclusive of interest, plus reasonable attorneys' fees of $2,000, and entered a total judgment of $9,669.97.
S T Bunn and American Casualty filed a motion to alter, amend, or vacate the judgment, again raising the issue of good faith, which the trial court denied. S T Bunn and American Casualty appeal.
The sole issue before this court on appeal is whether the trial court erred in entering the summary judgment in favor of Cataphote.
At the outset, we note that the standard of review applicable to a summary judgment is the same as the standard for granting the motion. We must determine whether there was a genuine issue of material fact, and, if not, whether Cataphote was entitled to a judgment as a matter of law. Olympia Produce Co. v.Associates Fin. Services, 584 So.2d 477 (Ala. 1991). This court must also review the record in the light most favorable to S T Bunn and American Casualty and resolve all reasonable doubts against Cataphote. Olympia.
S T Bunn and American Casualty contend that the summary judgment was improperly entered in this case, because, it says, Cataphote did not supply the materials to Pennington in good faith.
Section 39-1-1, Code 1975, was patterned after the Miller Act, 40 U.S.C.A. §§ 270a-270d, and was enacted for the same purposes. Headley v. Housing Authority of Prattville,347 So.2d 532 (Ala.Civ.App. 1977). The purpose of § 39-1-1 is to provide security for those who furnish labor and material in the performance of government contracts as a substitute for unavailable lien rights, and the act is liberally construed to accomplish this purpose. Headley.
It is well settled that the following elements must be satisfied before a party can recover pursuant to the Miller Act:
 "1) that materials were supplied for work in the particular contract at issue; 2) that the supplier is unpaid; 3) that the supplier had a good faith belief that the materials were for the specified work; and 4) that jurisdictional requisites are met."
United States ex rel. Krupp Steel Products, Inc. v. Aetna Ins.Co., 831 F.2d 978, 980 (11th Cir. 1987). (Citation omitted.) The third element, good faith, is the only one of the aforementioned elements that is at issue in this case.
S T Bunn and American Casualty contend that the issue of good faith cannot properly be determined by summary judgment and cite Riley-Stabler Constr. Co. v. Westinghouse Electric Corp.,396 F.2d 274 (5th Cir. 1968), in support of this contention.
The trial court's judgment does not make any finding as to good faith on the part of Cataphote. S T Bunn and American Casualty contend that Cataphote, as a materials supplier, cannot ship massive quantities of paint materials requested by a subcontractor to a project covered by a bond and expect payment under the statute without a measure of good faith, and that there has been no determination in this case that Cataphote used good faith in supplying the *Page 1328 
quantity of paint reasonably necessary for this project. The court in Riley-Stabler held
 "that 'good faith' involves 'motive' and 'subjective feelings' requiring the searching of 'consciousness and conscience' and that 'examination and cross-examination were necessary instruments in obtaining the truth.'
 ". . . [I]t is our opinion that as a general proposition the issue of good faith is inappropriate for determination by summary judgment procedure. A factual dispute on that issue can more properly be resolved on trial of the case."
Riley-Stabler at 277.
In reviewing the record in the light most favorable to S T Bunn and American Casualty and resolving all reasonable doubts against Cataphote, and in view of the above-stated case law, we hold that there was a genuine issue of material fact; that Cataphote was not entitled to a judgment as a matter of law, and that the issue of good faith in this case can more properly be resolved by trial. Riley-Stabler. Accordingly, the judgment of the trial court is reversed, and this case is remanded for further proceedings.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THIGPEN and YATES, JJ., concur.