On August 10, 1989, the City of Birmingham awarded a $179,805 contract to A.G. Gaston Construction Company, Inc., to beautify the Third Avenue North area as part of a street improvement program. The firm of Grover, Harrison Harrison ("GHH"), landscape architects, was authorized to oversee the project for the City. The project was scheduled to begin October 9, 1989, and end February 5, 1990. As required under § 39-1-1, Ala. Code 1975, Gaston, on September 1, 1989, executed a $179,805 performance bond and a labor and material bond with International Fidelity Insurance Company ("IFI").
On September 27, 1989, Gaston entered into a subcontract with Omega Nursery Company to perform the landscape work for the project, for $95,164.25. The terms of the subcontract provided that Gaston would pay Omega for "satisfactory performance" on a "unit price" basis. Before Omega could begin planting any plant material, GHH had to approve each shipment of plant material. Gaston received "provisional acceptance" on all of the plant material that it planted.
During the project, Omega experienced several delays, which caused the project *Page 546 
deadline to be extended from February 5 to March 30. By mid-February, Omega finished planting all the plant material and began maintaining and nurturing it.
On February 28, the City, GHH, Gaston, and Omega representatives made a "walk-through" inspection of the project. A number of "punchlist" items were noted, and the group agreed to review them at the end of March. Omega continued maintenance of the project throughout March. On March 30, the City, GHH, Gaston, and Omega representatives conducted another "walk-through" to review the "punchlist" items. After the "walk-through," the City notified Gaston that certain plant materials were rejected, and it refused to give Gaston a "final completion" certificate evidencing final acceptance of the project. Gaston terminated Omega on May 12 because of what it considered unsatisfactory performance.
Gaston received progress payments from the City as it submitted invoices on a unit-by-unit basis for Omega's work. Payment to Gaston exceeded $90,000 through April 1990 for the landscaping work performed by Omega. The subcontract provided that Omega was to be paid within "seven days after receipt by Contractor [Gaston] of payment by Owner [City] for Subcontractor's [Omega's] work." Omega repeatedly sought payments for its services, but Gaston refused to pay Omega, because of the condition of the project. In addition, Omega sought compensation of $3,016.44 for re-landscaping work that was not included in the original subcontract.
In May, Omega's attorney put Gaston's surety, IFI, on notice of its claim, in the amount of $93,760, as required by §39-1-1, Ala. Code 1975. Omega sued Gaston and IFI, alleging breach of contract and claiming $93,760 for labor and materials supplied to a public works project, pursuant to § 39-1-1, Ala. Code 1975. Gaston counterclaimed, alleging that Omega had breached the contract and owed Gaston $27,790.79 for expenses incurred in taking over the project.
After six days of oral testimony and the presentation of voluminous exhibits, the trial court, in a 28-page order, ordered Gaston to pay Omega $52,886 for breach of contract damages; $33,872.63 damages for "unforeseen site conditions"; $3,016.44 for "unanticipated trench work"; and $23,045.68 interest, totalling $113,493.78. Further, the court ordered Omega to pay Gaston $26,456.75 for replacing rejected plant material. Gaston appealed. The issue of the award of reasonable attorney fees was reserved pending the outcome of this appeal.
Gaston contends the trial court erred in: (1) awarding Omega any damages because, it says, Omega failed to satisfactorily perform the contract; and (2) awarding Omega $33,872.63 in damages for unforeseen site conditions and $3,016.44 for unanticipated trench work. Further, Gaston contends that if this court determines that Omega was entitled to any damages, the recovery should be based on the quantum meruit theory.
Gaston agreed to pay Omega based on "satisfactory performance." Gaston argues that Omega failed to perform satisfactorily and therefore that Gaston does not owe Omega any payments. The City rejected 100% of the Virginia pines, 97% of the photinias and 82% of the magnolias used for the project. Because the City accepted only 52% of the total dollar value of the contract, Gaston argues that Omega did not satisfactorily perform the entire contract, and therefore, is not entitled to recover any amount under the contract.
We note:
 " 'It is the policy of this Court to presume correct the findings of the trial court based upon competent evidence, when the evidence is presented ore tenus. Such findings will not be disturbed on appeal if supported by the evidence or any reasonable inference therefrom, unless they are plainly and palpably erroneous and manifestly unjust.' "
Mac Pon Co. v. Vinsant Painting Decorating Co.,423 So.2d 216, 218 (Ala. 1982) (quoting First Alabama Bank of Montgomeryv. Coker, 408 So.2d 510 (Ala. 1982). We disagree with Gaston's contention. The trial court's well reasoned order stated:
 "Omega brings this action under Section 39-1-1
of the Code of Alabama (1975). This statute is patterned after the federal Miller Act, and requires contractors on *Page 547 
state and local projects to provide a performance and payment bond for the protection of the government and suppliers. See Universal Electric Constr. Co. v. Robbins, 239 Ala. 105, 194 So. 194
(1940). The contractor must be liable for some claim, however, before the surety can be liable. Magic City Paint Varnish Co. v. American Surety Co., 228 Ala. 40, 152 So. 42 (1934). The amount properly recoverable by a subcontractor is the agreed contract amount. Price v. H.L. Coble Construction Co., 317 F.2d 312 (5th Cir. 1963).
 "The history of Alabama's 'little Miller Act' was reviewed by the Fifth Circuit in Riley-Stabler Construction Co. v. Westinghouse Electric Corp., 396 F.2d 274 (5th Cir. 1968). The court noted that § 39-1-1 and its predecessor were borrowed from the federal Miller Act. The courts of this state traditionally have looked to federal decisions interpreting the Miller Act to provide guidance in interpreting Alabama's statute. See Headley v. Housing Authority, 347 So.2d 532
(Ala.Civ.App. 1977). Both § 39-1-1 and the Miller Act are to be liberally construed in favor of the supplier. As one court stated:
 " 'The purpose of the [Miller] Act was to provide the payment of all persons who provide labor or materials on public works. This was done by giving a claim under the bond in lieu of the lien upon land and buildings customary where property is owned by private persons. Decisions of this court have made it clear that the statute and bonds given under it must be construed liberally, in order to effectuate the purpose of Congress as declared in the act. In every case which has come before this court, where labor and materials were actually furnished for and used in part performance of the work contemplated in the bond, recovery was allowed, if the suit was brought within the period prescribed by the act.' U.S. Carlisle Construction Co. v. Coastal Structures, 689 F. Supp. 1092, 1097
(M.D. Fla. 1988), quoting Illinois Surety Co. v. John Davis Co., 244 U.S. 376, 380, 37 S.Ct. 614, 616, 61 L.Ed. 1206 (1917).
 "The courts have articulated four elements which must be shown before a supplier is entitled to recover under a Miller Act payment bond: (1) that materials or labor were supplied for work on the public project at issue; (2) that the supplier was not paid for the materials or labor supplied; (3) that the supplier had a good faith belief that the materials furnished were for the project in question; and (4) that the jurisdictional requisites had been met. See United States ex rel. Krupp Steel Products, Inc. v. Aetna Insurance Co., 831 F.2d 978, 980 (11th Cir. 1987).
 "The threshold issue on this bond claim is whether the contractor, Gaston, is liable to the subcontractor, Omega for labor, material, or supplies."
The trial court correctly concluded that Omega was "entitled to recover for the satisfactorily performed work." Because the contract was based on payment per unit price, the contract was severable. See Blythe v. Embry, 36 Ala. App. 596, 61 So.2d 142
(1952). The trial court found that "Gaston's refusal to pay Omega on the basis of unsatisfactory performance was arbitrary, capricious, and not in good faith." Further, the trial court found: "Clearly, Omega substantially performed the subcontract." "Substantial performance of a contract does not contemplate exact performance of every detail but performance of all important parts." Mac Pon Co., supra, at 218. We agree that Omega satisfied the requisite elements for recovery under the statute. See S T Bunn Constr. Co. v. Cataphote, Inc.,621 So.2d 1325 (Ala.Civ.App. 1993). The trial court's conclusion that Omega was entitled to payment for the work it satisfactorily performed is supported by the evidence.
The remaining issues concern whether the trial court erred in awarding Omega $33,872.63 for "unforeseen site conditions" and $3,016.44 for "unanticipated trench work" and whether the trial court erroneously failed to apply the quantum meruit theory. The appellant cites no legal authority to support its propositions. Citation to trial testimony in the record is not enough. "One is *Page 548 
required to support allegations of error with legal authority, and, to do otherwise, does not constitute a valid argument."Price's Bar-B-Que v. Carter, 541 So.2d 38, 39
(Ala.Civ.App. 1989). Accordingly, we decline to review these issues on appeal. Rule 28(a)(5), Ala.R.App.P. The trial court's order is due to be affirmed.
AFFIRMED.
ROBERTSON, P.J., and THIGPEN, MONROE, and CRAWLEY, JJ., concur.