On Application For Rehearing
The no-opinion order of affirmance of December 7, 2001 is withdrawn and the following is substituted therefor.
Bill Harbert Construction Company ("Harbert") and Federal Insurance Company ("Federal") appeal from a summary judgment entered by the Mobile Circuit Court in favor of I. Kruger, Inc. ("Kruger"), awarding Kruger $129,918.03. We affirm.
 Facts
Harbert and the Board of Water and Sewer Commissioners of the City of Mobile ("the Water Board") entered into a contract, pursuant to which Harbert was to upgrade a wastewater treatment plant owned and operated by the Water Board. Federal Insurance Company acted as the surety and provided a labor and material payment bond ("the payment bond") in connection with this contract, with Harbert acting as the principal.
Harbert subcontracted with Kruger for the purchase from Kruger of a "reactor basin oxygen dissolution system," for the purchase of certain related parts, and for start-up and training services associated with the dissolution system. The total purchase price of the subcontract was $963,200. The subcontract called for Harbert to make monthly progress payments to Kruger during Kruger's performance, but also allowed Harbert to retain 10% of the total purchase price, or $96,320, until the following conditions were met:
 "A final payment, consisting of the unpaid balance of the Price, shall be made thirty (30) days after the last of the following to occur, (a) Purchaser's *Page 734 
 receipt of all Products in satisfactory condition, (b) final payment by Owner to Purchaser on account of the Products including retainage, (c) delivery of all guarantees, certifications and information required under the Contract Documents, and (d) delivery of a general release, in a form satisfactory to Purchaser, executed by Seller running to and in favor of Purchaser and Owner."
Kruger did, in fact, supply the dissolution system and all related parts to Harbert, as required under the subcontract. Subsequent to this delivery, but before the completion of the subcontract, however, a dispute arose between Harbert and the Water Board. Although Kruger repeatedly notified Harbert that it was ready to perform its duties under the subcontract, Harbert never requested any further services or assistance from Kruger. The Water Board subsequently terminated Harbert's contract. Thus, Kruger was unable to fulfill the terms of its subcontract with Harbert.
On September 22, 1998, after more than a year had elapsed without Harbert's requesting Kruger to perform the start-up or training services referenced in the Harbert-Kruger subcontract, Kruger billed Harbert for one-half of the remaining 10% due under the subcontract ("the retainage"). On December 18, 1998, Kruger billed Harbert for the other one-half of the retainage. When Harbert did not pay the amounts billed, Kruger notified Federal, the surety, of its claim under the payment bond.
Kruger later instituted this action against Harbert and against Federal, seeking to collect the $96,320 retainage. Kruger's claims were premised on the language of the payment bond and on Ala. Code 1975, §39-1-1 et seq., known as Alabama's "little Miller Act."[1]
Kruger filed a motion for a summary judgment on its claim for payment. Federal filed no opposition to Kruger's motion for a summary judgment. Harbert, however, opposed Kruger's summary-judgment motion on two grounds.
Harbert first contended that Kruger had not fully performed under its subcontract with Harbert. In support of this argument, Harbert submitted the affidavit of Michael E. Lamb, the division manager of Harbert's utility and industrial division. In that affidavit, Lamb attested that "[a]s a result of the Board's wrongful termination of the Upgrade and Modifications Contract, Kruger's obligations under the Kruger Subcontract have not been and cannot be satisfied." In particular, Lamb testified that Kruger had not fully provided the "construction assistance," "testing," "demonstrations," "start-up," and "training," specified in the subcontract and had not met the "requirements for guarantees, certifications and information."
Second, Harbert relied on the "pay-when-paid" clause in the Harbert-Kruger subcontract for the proposition that Kruger was not due payment of the retainage until the Water Board paid Harbert. As authority for this position, Harbert relied upon the case of James E. Watts SonsContractors, Inc. v. Nabors, 484 So.2d 373 (Ala. 1985), and A.G. GastonConstruction Co. v. Hicks, 674 So.2d 545 (Ala.Civ.App. 1995). *Page 735 
The trial court entered a summary judgment in favor of Kruger against both Harbert and Federal. Harbert and Federal appealed, and we initially affirmed the trial court's judgment without an opinion. Harbert filed an application for rehearing, which we are overruling.
 Standard of Review
In Jefferson County Commission v. ECO Preservation Services, L.L.C.,788 So.2d 121 (Ala. 2000), this Court addressed the standard applicable to our review of a ruling on a summary-judgment motion. The ECOPreservation Services Court stated:
 "When reviewing a ruling on a motion for a summary judgment, this Court uses the same standard of review the trial court used `in determining whether the evidence before the court made out a genuine issue of material fact.' Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala. 1988). When a party moving for a summary judgment makes a prima facie showing that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Substantial evidence is `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). In reviewing a ruling on a motion for a summary judgment, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the [fact-finder] would have been free to draw. Renfro v. Georgia Power Co., 604 So.2d 408 (Ala. 1992)."
788 So.2d at 126-27.
 Analysis
We must determine whether Kruger is entitled to recover under the payment bond. The payment bond states that it was given pursuant to §39-1-1, Ala. Code 1975, the little Miller Act. The little Miller Act provides, in pertinent part:
 "(a) Any person entering into a contract with an awarding authority in this state for the prosecution of any public works shall, before commencing the work, execute a performance bond, with penalty equal to 100 percent of the amount of the contract price. In addition, another bond, payable to the awarding authority letting the contract, shall be executed in an amount not less than 50 percent of the contract price, with the obligation that such contractor or contractors shall promptly make payments to all persons supplying labor, materials, or supplies for or in the prosecution of the work provided in the contract and for the payment of reasonable attorneys' fees incurred by successful claimants or plaintiffs in civil actions on the bond.
 "(b) Any person that has furnished labor, materials, or supplies for or in the prosecution of a public work and payment has not been made may institute a civil action upon the payment bond and have their rights and claims adjudicated in a civil action and judgment entered thereon. . . . In the event the surety or contractor fails to pay the claim in full within 45 days from the mailing of [written notice to the surety of the amount claimed to be due and the nature of the claim], then the person or persons may recover from the contractor and surety, in addition to the amount of the claim, a *Page 736 
 reasonable attorney's fee, based on the result, together with interest on the claim from the date of the notice."
The trial court noted that the purpose of a payment bond required under the little Miller Act is to "shift the ultimate risk of nonpayment from workmen and suppliers to the surety." (citing American Sur. Co. v.Hinds, 260 F.2d 366, 368 (10th Cir. 1958). Thus, Kruger, as a subcontractor and a supplier on the Water Board-Harbert project, is a member of the class the little Miller Act was intended to protect. The Act is to be liberally construed to effect the purpose of the statute.Sparks Constr., Inc. v. Newman Bros., 51 Ala. App. 690, 288 So.2d 749
(1974). Where a payment bond shows on its face that it was executed in compliance with the Act, a court is authorized to read into the bond the provisions of the statute and to give the bond the form and effect the statute contemplated, regardless of the contents of the bond. AmericanCas. Co. v. Devine, 275 Ala. 628, 157 So.2d 661 (1963); Water Works, Gas Sewer Bd. of Oneonta, Inc. v. P.A. Buchanan Contracting, Inc.,294 Ala. 402, 318 So.2d 267 (1975).
In A.G. Gaston Construction Co. v. Hicks, 674 So.2d 545 (Ala.Civ.App. 1995), the Court of Civil Appeals quoted the United States Court of Appeals for the Eleventh Circuit and identified four elements that must be proven before a supplier or a subcontractor is entitled to recover under a payment bond issued pursuant to the little Miller Act:
 "`(1) that materials or labor were supplied for work on the public project at issue; (2) that the supplier was not paid for the materials or labor supplied; (3) that the supplier had a good faith belief that the materials furnished were for the project in question; and (4) that the jurisdictional requisites had been met.'"
674 So.2d at 547 (quoting United States ex rel. Krupp Steel Prods., Inc.v. Aetna Ins. Co., 831 F.2d 978, 980 (11th Cir. 1987)). The trial court found, and the record establishes, that Kruger met these four elements in supporting its motion for a summary judgment against both Harbert and Federal. For this reason, the trial court granted Kruger's summary-judgment motion.
On appeal, Harbert and Federal do not contest the trial court's finding that Kruger established the four elements identified above as necessary to recover under the payment bond. Harbert and Federal, citing A.G.Gaston Construction Co., supra, assert that the trial court improperly granted Kruger's summary-judgment motion because Kruger has no right to recover under the payment bond until Kruger has fulfilled all of the conditions specified in the Harbert-Kruger subcontract. Harbert and Federal contend that all of the conditions specified in the payment clause of the Harbert-Kruger subcontract have not been met. Specifically, Harbert and Federal contend (1) that Kruger failed to provide all of the testing, training, and start-up assistance required of it under the terms of the Harbert-Kruger subcontract and (2) that, as a result of the pay-when-paid clause, Kruger has no right to payment of the retainage until the Water Board pays Harbert. Accordingly, Harbert and Federal assert that the summary judgment in favor of Kruger should be reversed.
It is true that if Kruger has no right of recovery against the principal — in this case, Harbert — Kruger may not recover against the surety — in this case, Federal — on the payment bond. See A.G. Gaston Constr. Co., 674 So.2d at 547 ("The contractor must be liable for some claim . . . before the surety can be liable."). Thus, in order to determine whether Kruger is entitled to recover under the terms of the payment bond, we must first determine *Page 737 
whether Kruger is entitled to recover under the Harbert-Kruger subcontract.
 Kruger's Performance Under the Subcontract
Harbert and Federal contend that Kruger failed to fulfill its obligations under the terms of the Harbert-Kruger subcontract. The trial court concluded that the only reason Kruger did not fully perform its obligations under the subcontract was that it was impossible to do so, through no fault of its own. The trial court found that Kruger notified Harbert that it was ready to fully perform and it waited more than a reasonable time for approval to proceed with the final aspects of the subcontract before seeking final payment from Harbert and before filing its action. However, Harbert did not allow Kruger to perform because the Water Board had terminated Harbert's contract.
The trial court's order notes that, when this case was tried, Kruger had been seeking final payment on the subcontract for over two years and that, during that time, Harbert had not once requested Kruger to perform any of the services it had not yet performed under the subcontract. Only after this litigation was filed did Harbert raise the issue of Kruger's failure to fully perform.
The record supports the trial court's holding on this issue. In fact, Harbert's own evidentiary submission supports the trial court's holding. Kruger, through no fault of its own, was prevented from completing the requirements of its subcontract with Harbert. As a result, Kruger is excused from any further performance under the subcontract, and Kruger has a claim against Harbert under that subcontract. See Shirley v. Lin,548 So.2d 1329, 1334 (Ala. 1989) ("Once a party to a contract repudiates the agreement, the other party is excused from further performance.");Health Care Mgmt. Corp. v. Rubenstein, 540 So.2d 77, 78 (Ala.Civ.App. 1989) ("Because of the defendant's material breach of the contract, the plaintiff's future performance of the contract was excused and the plaintiff had an immediate cause of action for that breach."). See also Exparte A.B./Wildwood Ltd. P'ship, 793 So.2d 784, 790 (Ala. 2000) (Lyons, J., concurring in the result) ("Once a party has committed an anticipatory breach, the other party is excused from further performance."); 17B C.J.S. Contracts § 531 (1999) ("The party who is prevented by the other party from performing, or whose performance is made impossible by him or her, may treat the contract as broken or breached, or as repudiated, or rescinded, and may recover whatever damages he or she may have sustained, as if he or she had performed."). Thus, the fact that Kruger was prevented from fulfilling its obligations under the Harbert-Kruger subcontract does not prevent Kruger from recovering under the payment bond.
 The Pay-When-Paid Clause: Condition Precedent or Timing Mechanism?
Harbert and Federal also argue that, regardless of whether Kruger has fulfilled its obligations under the subcontract, the pay-when-paid clause contained in the Harbert-Kruger subcontract is a condition precedent to Harbert's payment of the retainage. Accordingly, Harbert contends that Kruger may not recover payment of the retainage under the payment bond until Harbert receives payment of the amount of the retainage from the Water Board, which, we note, may never occur.
We agree, for several reasons, with the trial court's conclusion that the pay-when-paid clause did not create a condition precedent to payment but was rather merely a timing mechanism for the final payment under the subcontract. We find authority *Page 738 
for this position in the language of the subcontract, in our caselaw, in the Restatement (Second) of Contracts, and in the holdings of numerous other jurisdictions.
First, the payment clause in the subcontract clearly provides that "[a] final payment . . . shall be made within thirty (30) days after the last of the following to occur. . . ." (Emphasis added.) As the trial court noted, "[t]he parties certainly intended that Kruger would receive payment." We agree. The language quoted above uses the mandatory "shall" in conjunction with the verb "pay." A reasonable interpretation of this language is that it creates on the part of Harbert an absolute obligation to pay; the language that follows — "within thirty (30) days after the last of the following to occur: (a) . . ., (b) . . ., (c) . . ., and (d) . . ." — is reasonably read as merely specifying the time for payment, rather than as creating a condition precedent to payment.
We find support for this interpretation in the similar case of Crassv. Scruggs, 115 Ala. 258, 22 So. 81 (1897). In Crass v. Scruggs, the general contractor, Crass, contracted to provide services to a railroad company. Crass then entered into a subcontract with Scruggs, pursuant to which Scruggs agreed to provide certain services to Crass. The subcontract between Crass and Scruggs contained the following provision: "`Payments based on engineer's estimates, and to be made on the 15th of each month, or as soon thereafter as said R.R. Company pays or causes to be paid the said J.T. Crass.'" 115 Ala. at 264, 22 So. at 82. Scruggs performed as required under the terms of its subcontract with Crass. After three years elapsed without payment from Crass, Scruggs sued, seeking to recover payment under the subcontract.
Crass defended the claim for payment, contending that the pay-when-paid clause created a condition precedent to payment and that the condition had not been fulfilled — i.e., the railroad company had not paid Crass. Therefore, Crass contended, it had no obligation to pay Scruggs. The trial court entered a judgment in favor of Scruggs and Crass appealed.
The Alabama Supreme Court affirmed the judgment in favor of Scruggs, stating:
 "[A]pplying the general rules of construction we have stated, we do not doubt that the provision of the contract merely prescribes a time of payment, and not a condition upon which payment was dependent.
 "Can it be reasonably supposed it was contemplated that the plaintiffs would devote their time, labor, and means to the work they were bound to complete within a particular period, without an absolute engagement from the defendant to pay them? . . . [Scruggs] had no contact with the railroad company; were unknown to it; and to them the company owed no duty. [Crass] had contractual relation with it, and from it expected to derive funds to meet his engagement to [Scruggs]; and it was time to realize these funds for which he was contracting, and not freedom from liability if they were not realized.
 "Similar contracts have been the subject of frequent construction, and the construction deemed best to give effect to the intention of the parties has been that which avoids the conversion of an absolute into a conditional engagement, or which puts it into the power of a defendant at his mere option to pay or not to pay. . . . In McCarty v. Howell, 24 Ill. 341
[(1860)], a note payable four months after date, containing the clause, `or as soon as I shall be able to collect a certain note against Abram Davis,' was held to be due absolutely at four months, or sooner if the Davis note was collected. The court said, unless this was the *Page 739 
 construction, no meaning could be given to the promise of payment at `four months after date.' In Harlow v. Boswell, 15 Ill. 56 [(1853)], a note payable `twelve months after date, * * * or as soon as I can sell the above amount of Allen's Vegetable Tonic,' was deemed payable absolutely at twelve months. . . . In Nunez v. Dautel, [86 U.S. (19 Wall.)] 560 [(1873)], the action was upon an instrument acknowledging indebtedness for services rendered containing this clause: `This we will pay as soon as the crop can be sold, or the money raised from any other source, payable with interest.' The construction the instrument received was, that it was a promise to pay as soon as the crop was sold, or the money was received from any other source, or after the lapse of a reasonable time for the sale of the crop or the derivation of the money from other sources; that it was not intended if the crop was not raised, or was destroyed and never sold, or the money was not realized from other sources, that the debt should not be paid. `Such a result,' it was said, `would be a mockery of justice.' There are other authorities leading to the like conclusion, but we are content with a mere reference to them. Eaton v. Yarborough, 19 Ga. 82 [(1855)]; Lewis v. Tipton, 10 Ohio St. 88 [(1859)]; Crooker v. Holmes, 65 Me. 195
[(1875)].
 "It is insisted that the parties construed the promise of payment as conditional — that [Crass] was not under liability to pay [Scruggs] until the railroad company paid him. The facts upon which it is supposed this construction may be imputed to [Scruggs] are, that they recognized [Crass] as having a contract with the railroad company — that the estimates of the work were made by the engineer of the company; and that before the commencement of this suit, near three years after the completion of the work, they made out no account against [Crass], making demand of its payment. This is a slender foundation on which to impute to [Scruggs] concurrence in a construction of the contract, converting the engagement of [Crass] into a conditional promise, dependent on the action of the railroad company, over which [Scruggs] could have no control."
Crass v. Scruggs, 115 Ala. at 265-68, 22 So. at 82-83. We agree with the reasoning of the Crass Court, and that reasoning is applicable in this case. Can it be reasonably supposed, without express evidence in support thereof, that Harbert and Kruger entered into an agreement pursuant to which Kruger was expected to perform a significant amount of work and to provide a substantial amount of materials under the terms of the subcontract, without an absolute agreement from Harbert to pay Kruger for its services and materials? We think not, and nothing in the record indicates that Kruger agreed to assume the risk of nonpayment by the Water Board for events completely outside its control or influence.
We find further support for our reading of the Harbert-Kruger pay-when-paid clause in Restatement (Second) Contracts § 227 (1981), which provides, in pertinent part:
 "(1) In resolving doubts as to whether an event is made a condition of an obligor's duty, and as to the nature of such an event, an interpretation is preferred that will reduce the obligee's risk of forfeiture, unless the event is within the obligee's control or the circumstances indicate that he has assumed the risk."
Comment b. to § 227 addresses the forfeiture of compensation that results when an event is made a condition precedent to an obligor's duty. Under § 227, the preferred interpretation for the pay-when-paid clause contained in the Harbert-Kruger *Page 740 
subcontract is one that minimizes the risk of forfeiture to Kruger, unless the circumstances indicate that Kruger assumed the risk of nonpayment. As stated above, nothing in the record indicates that Kruger assumed such a risk.
Harbert relies heavily on the case of James E. Watts SonsContractors, Inc. v. Nabors, 484 So.2d 373 (Ala. 1985), as authority for its position; however, this reliance is misplaced. Watts is factually distinct from this case. In Watts, the contract in question was an oral one, and Nabors, the subcontractor, testified that he knew he would not be paid until Watts Sons, the contractor, received payment from the City of Rainsville. Thus, in Watts, the circumstances clearly indicated that the subcontractor assumed the risk of nonpayment. We have no such admission in this case; we find nothing in the record indicating that Kruger assumed the risk of nonpayment; and we are presented with a written contract rather than an oral one. Accordingly, the Watts case is not dispositive of whether the pay-when-paid language contained in the Harbert-Kruger subcontract was intended to create a condition precedent to payment.[2]
Further, we note that the majority of other jurisdictions construe pay-when-paid clauses in a similar manner — i.e., the majority of jurisdictions construe such a provision as allowing payment under the contract to be delayed but not stopped altogether. See, e.g., Thos. J.Dyer Co. v. Bishop Int'l Eng'g Co., 303 F.2d 655 (6th Cir. 1962); Dancyv. William J. Howard, Inc., 297 F.2d 686 (7th Cir. 1961); StatesvilleRoofing Heating Co. v. Duncan, 702 F. Supp. 118 (W.D.N.C. 1988);Robinson Son, Inc. v. Ground Improvement Techniques,31 F. Supp.2d 881 (D. Col. 1998); Brown Kerr Inc. v. St. Paul Fire Marine Ins. Co., 940 F. Supp. 1245 (N.D.Ill. 1996); Southern StatesMasonry, Inc. v. J.A. Jones Constr. Co., 507 So.2d 198 (La. 1987); Kochv. Construction Tech., Inc., 924 S.W.2d 68 (Tenn. 1996); and Byler v.Great Am. Ins. Co., 395 F.2d 273, 277 (10th Cir. 1968). These courts reached results nearly identical to the result reached by the Crass
Court, applying almost identical reasoning, further strengthening our belief in the correctness of Crass, the proper application of Restatement(Second) Contracts § 227, and our reading of the Harbert-Kruger subcontract.
For example, in Koch v. Construction Technology, Inc., the Tennessee Supreme Court held that the following payment clause did not create a condition precedent to the general contractor's obligation to pay the subcontractor:
 "`Partial payments subject to all applicable provisions of the Contract shall be made when and as payments are received by the Contractor. The Subcontractor may be required as a condition precedent to any payment to furnish evidence satisfactory to the Contractor that all payrolls, material bills, and other indebtedness applicable to the work have been paid.'"
924 S.W.2d at 69. The Koch Court interpreted this provision to create a timing mechanism for payment rather than a condition precedent to payment, stating:
 "First, it is well-established that condition precedents are not favored in contract law, and will not be upheld unless there is clear language to support them. Furthermore, this general rule applies with particular force in the context of *Page 741 
 `pay when paid' clauses, for the plaintiff is correct that an overwhelming majority of jurisdictions do not construe such clauses so as to release the general contractor from all obligation to make payment to the subcontractor in case of nonperformance by the owner. Rather, these clauses are most often construed as simply affecting the timing of payments that the general contractor is required to make to the subcontractor, regardless of whether the owner performs or not. These courts refuse to shift the risk of the owner's nonperformance from the general contractor to the subcontractor unless the language clearly indicates that the parties intended to do so."
924 S.W.2d at 71 (citations and footnotes omitted).
For these reasons, we agree with the trial court that the pay-when-paid clause in the Harbert-Kruger subcontract did not create a condition precedent to payment, but that it was merely a timing mechanism for payment. Because Kruger has satisfactorily performed under the subcontract and a reasonable time has passed without payment, Kruger is entitled to payment from Harbert. Accordingly, the pay-when-paid clause does not bar Kruger from recovering under the payment bond.
 May Kruger Recover From Federal Under the Payment Bond?
We agree with the trial court's finding that Kruger established that it had complied with the terms of the payment bond and established the elements necessary to recover under the little Miller Act. Having concluded that Kruger is excused from further performance under the Harbert-Kruger subcontract and that the pay-when-paid clause created a timing mechanism for payment rather than a condition precedent to payment, we conclude that Harbert and Federal did not rebut Kruger's showing that it was entitled to a summary judgment on its claim for payment under the payment bond. Accordingly, we affirm the summary judgment in favor of Kruger against Harbert and Federal.
We also affirm the summary judgment entered against Federal for another reason. We note that Kruger's claim against Federal is premised upon the terms of the payment bond, rather than on the terms of the Harbert-Kruger subcontract. The payment bond and the subcontract are separate contracts, and neither references nor incorporates the terms of the other. More specifically, the payment bond does not condition payment to Kruger on the Water Board's making a final payment to Harbert.
Moreover, allowing a surety on a payment bond, such as Federal, to assert a pay-when-paid clause as a defense to an action seeking payment on the bond would defeat the very purpose of a payment bond issued to guarantee payment to a subcontractor. The reasons for this limitation upon the surety are aptly noted in Brown Kerr Inc. v. St. Paul Fire Marine Insurance Co., supra, a case postured almost identically to this one.
In Brown Kerr Inc., St. Paul, as surety for a general contractor, sought to defend a subcontractor's claim made against the payment bond by relying upon a pay-when-paid clause in the subcontractor's contract. St. Paul contended that the "liability of a surety under a payment bond is coextensive with that of its principal" and that the "rights and defenses of the principal also belong to the surety." 940 F. Supp. at 1248-49.
In rejecting St. Paul's defense, the federal district court stated:
 "[The subcontractor] is suing under the Bond and not the subcontract. The two are separate agreements. St. Paul [the surety] has neither cited, nor have we discovered, any authority for the *Page 742 
 proposition that the inability to proceed against the general contractor because of a `pay when paid' clause in the subcontract necessarily prevents recovery against the surety under the payment Bond. Indeed, such an argument runs counter to the underlying purpose of the payment Bond, i.e., the assurance of payment to subcontractors.
 "Moreover, the specific payment Bond issued by St. Paul does not condition payment to [the subcontractor] on the owner making final payment to [the general contractor]. Nor does the Bond incorporate the payment terms of the subcontract. The terms of the bond are clear and unambiguous. If [the general contractor], as principal, promptly pays [the subcontractor], then any obligation by St. Paul is void. However, if [the subcontractor] has not received final payment from [the general contractor] within ninety days after finishing work, [the subcontractor] may sue on the bond, prosecute the suit to final judgment, and have execution thereon. [The subcontractor] has satisfactorily performed under the subcontract and has yet to receive final payment and, therefore, St. Paul as surety is liable.
 "St. Paul argues that the `90 day' provision in the payment Bond merely allows the subcontractor to bring suit under the Bond but does not guarantee payment unless the claimant has complied with all provisions of the subcontract including the `pay when paid' clause. Significantly, however, [the subcontractor's] obligations under the Bond are completely unrelated to the `pay when paid' clause. Moreover, payment by the owners to [the general contractor] is not within [the subcontractor's] control. Pursuant to St. Paul's theory, a subcontractor could satisfactorily perform all of its own obligations under the subcontract and yet never recover under the Bond if the general contractor does not receive payment from the owner. We do not believe the Bond contemplates that payment of subcontractors should await the determination of an extended legal dispute between the owner and general contractor concerning his work which is completely unrelated to [the subcontractor], particularly since the underlying purpose of the bond is to assure the payment of subcontractors and when, as here, [the subcontractor] has completed performance under the subcontracts."
Brown Kerr Inc., 940 F. Supp. at 1249 (citations omitted).
This reasoning is both persuasive and applicable to the facts of this case; we, therefore, conclude that Federal may not assert the pay-when-paid clause as a defense to Kruger's suit on the payment bond. For this additional reason, we affirm the summary judgment entered against Federal on the payment bond.
 Conclusion
We conclude that Kruger met its burden of proof in establishing that it is entitled to recover under the payment bond issued pursuant to the little Miller Act. We conclude that Harbert and Federal have not rebutted this showing. We also conclude that Federal, as a surety on a payment bond, may not assert the pay-when-paid clause in the Harbert-Kruger subcontract as a defense to an action for payment on the payment bond. We affirm the summary judgment in favor of Kruger.
NO-OPINION ORDER OF AFFIRMANCE OF DECEMBER 7, 2001, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; AFFIRMED.
Moore, C.J., and Johnstone, Harwood, and Woodall, JJ., concur.
Houston, See, Lyons, and Brown, JJ., dissent.
[1] Alabama's little Miller Act was patterned after the federal Miller Act, codified at 40 U.S.C. § 270a-270d. The construction given to the federal act has been adopted in Alabama, unless otherwise noted. SeeWater Works, Gas Sewer Bd. of Oneonta, Inc. v. P.A. BuchananContracting Co., 294 Ala. 402, 318 So.2d 267 (1975); Bagby Elevator Elec. Co. v. Buzbee, 383 So.2d 170 (Ala.Civ.App. 1979), rev'd on other grounds, 383 So.2d 173 (Ala. 1980).
[2] The Watts case is also distinguishable for another reason: the claims asserted in Watts were not asserted pursuant to the little Miller Act, Ala. Code 1975, § 39-1-1, or, if they were, the impact of that Act was not discussed in the opinion. The claims in this case were brought pursuant to the terms of the payment bond and under Ala. Code 1975, § 39-1-1. *Page 743