PITTMAN, Judge.
CAM Investments, LLC, appeals from a summary judgment in favor of Charles Totty, Jr., in its breach-of-contract action against Totty. Totty cross-appeals from the denial of his attorney-fee claim pursuant to the Alabama Litigation Accountability Act (“ALAA”), § 12-19-270 et seq., Ala.Code 1975. We affirm the summary judgment in favor of Totty; we also affirm the circuit court’s order denying Totty’s attorney-fee claim.

Factual and Procedural Background

Following hail damage to his roof, Totty received from his homeowner’s insurer a check in the amount of $8,812.29 for replacement of the roof. On April 12, 2010, Totty discussed the roof damage with Chuck Isbell, then an employee of American Shingle & Siding, Inc. (“ASSI”), and contracted with ASSI to replace the roof. Totty endorsed the insurance check to ASSI.
In June 2010, Amber McMullen left her employment with ASSI and formed a new roofing company, CAM Investments, LLC, doing business as Aboveboard Roofing (“Aboveboard”). McMullen hired other former ASSI employees, including Isbell, to work for Aboveboard. Isbell, who was aware that ASSI had not undertaken any work on Totty’s roof, contacted Totty, explained that he had left his employment with ASSI, and stated that he “would see to it” that Totty’s roof was replaced by Aboveboard. Totty subsequently notified *751 ASSI that he wished to cancel his roof-replacement contract with ASSI and receive a refund of the insurance proceeds that he had delivered to ASSI. Isbell and Totty then orally agreed that Aboveboard would replace the roof and Isbell would turn over to Aboveboard the refund he received from ASSI and pay Aboveboard an additional $789 — the difference between the cost of the roof replacement and the amount of the ASSI refund.
ASSI sent Totty a letter acknowledging the cancellation of the contract and stating that “a refund in the amount of $8,812.29 will be made out to you and your mortgage company.” Totty informed Isbell that ASSI had agreed to make the refund. Is-bell, in turn, informed McMullen that Totty would pay “as soon as [Totty] get[s] [his] refund” and stated that Isbell hoped the refund would arrive within two weeks. On July 20, 2010, Isbell prepared a work order/invoice stating that Totty’s payment was “due after refund from ASSI.”
The parties agree that ASSI became insolvent, sought bankruptcy protection, and never issued a refund to Totty and that Totty did not make any payments to Aboveboard other than $789. The parties disagree about whether the signature purporting to be that of Totty on the work order/invoice is genuine.
In September 2011, Aboveboard sued Totty in the Elmore District Court, alleging that it had contracted with Totty to install a new roof on Totty’s residence, that it had satisfactorily completed the work, but that Totty had failed to pay the contract price. The district court entered a judgment in favor of Totty; Aboveboard appealed to the Elmore Circuit Court for a trial de novo.
Totty moved for a summary judgment. In support of that motion, Totty submitted a brief, his own affidavit, the affidavit of Isbell, and a canceled check dated September 8, 2010, and made payable to Aboveboard in the amount of $789. Although Totty claimed that his purported signature on the work order/invoice was a forgery, he acknowledged that the work order/invoice reflected the actual terms of his oral agreement with Isbell on behalf of Aboveboard. Totty’s affidavit states, in pertinent part:
“The work order prepared by Chuck Isbell clearly indicated that the expected payment to Aboveboard Roofing would be ‘due after refund from [ASSI].’
“I had no discussions with anyone representing Aboveboard Roofing, other than Chuck Isbell. My oral agreement with Chuck Isbell consisted only of an agreement that I would turn over any refund check from American Shingle and pay the difference in costs in the amount of $789.00, which I did.... The oral agreement between me and Chuck Isbell as the representative of Aboveboard Roofing was the total agreement. Aboveboard Roofing assumed the risk that the refund would not be forthcoming.
“... [T]he work order reflects the fact that [Aboveboard] relied on the refund check from [ASSI] in putting the roof on our home. I agreed to sign over the refund check from [ASSI] to the new organization composed of former employees of [ASSI], but did not agree to pay anything else, except the $789 overage which I paid on September 8, 2010.”
Isbell’s affidavit states:
“My name is Chuck Isbell. I am a former employee of [ASSI], a now-defunct national corporation engaging in the business of roof repair. During my employment with [ASSI], I met Charles Totty, Jr., and entered into a contract with him on behalf of [ASSI] for the repair of the roof on his home following *752 hail damage. A check in the amount of $8,812.29 was issued by Mr. Totty’s insurance company and delivered to [ASSI] in payment for the roof. However, [ASSI] never did the roofing work. Mr. Totty canceled his contract with [ASSI] and requested a refund of the amount of the check that had been issued by his insurance company. [ASSI] filed for bankruptcy.
“[ASSI] failed to install many roofs that it agreed to replace. I left the employment of [ASSI] and went to work for CAM Investments which did business as Aboveboard Roofing. CAM Investments was organized by Amber McMullen after [ASSI] began to default on contracts. A number of former employees of [ASSI] went to work for Aboveboard Roofing. It actually replaced a number of roofs that [ASSI] had agreed to replace, after [ASSI] defaulted.
“When I learned that Mr. Totty’s roof had not been replaced by [ASSI], I got in touch with him. I told him that Aboveboard Roofing would replace his roof. I saw a copy of a letter from [ASSI] agreeing to cancel the contract with Mr. Totty and refund his insurance money. I prepared a work order for Aboveboard Roofing to replace Mr. Totty’s roof. Mr. Totty did not sign that work order. (See Exhibit A attached hereto). I was the only person from Aboveboard Roofing who dealt with Mr. Totty in person. I sent an email to Amber McMullen telling her about the refund from [ASSI] (See Exhibit B attached hereto). Mr. Totty’s only obligation was to turn over the refund check from [ASSI] and to pay a small amount of money.
“Mr. Totty fulfilled all his obligations to Aboveboard Roofing. Aboveboard Roofing assumed the risk that [ASSI] would not make the agreed refund.”
Aboveboard filed a response in opposition to Totty’s motion, arguing that assumption of the risk is not a defense to a contract claim and attaching the affidavit of Amber McMullen, which states, in pertinent part:
“In early 2010, Chuck Isbell was employed by [Aboveboard] as an independent contractor to sell roofs. On or about July 20, 2010, Mr. Isbell contracted with Charles Totty to replace a roof on Mr. Totty’s home....
[[Image here]]
“Aboveboard Roofing proceeded with replacing the roof on Mr. Totty’s home. Mr. Totty lodged no complaint and never gave notice to Aboveboard Roofing that he failed to procure the refund from [ASSI]. Mr. Totty failed to pursue a refund from [ASSI] beyond receiving the refund letter and urged Aboveboard Roofing to complete the project under the promise of payment. To date, Mr. Totty has received a new roof and has only paid $789.00 to Aboveboard Roofing. Mr. Totty further made statements to Mr. Isbell that the refund was forthcoming and that it would be forwarded when received.”
On May 16, 2012, the circuit court entered a summary judgment in favor of Totty that did not adjudicate Totty’s ALAA claim; on June 13, 2012, the circuit court entered an order expressly denying Totty’s ALAA claim, thereby timely amending the judgment of that court. See Casey v. McConnell, 975 So.2d 384, 388-89 (Ala.Civ.App.2007). Aboveboard filed a timely notice of appeal, and Totty filed a timely cross-appeal.

The Appeal Standard of Review

We review a summary judgment de novo, applying the same standard of re *753 view as the trial court applied. Turner v. Westhampton Court, L.L.C., 903 So.2d 82, 87 (Ala.2004). A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing “that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law.” Rule 56(c)(3); see Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala.1992). If the movant meets this burden, “the burden then shifts to the nonmovant to rebut the movant’s prima facie showing by ‘substantial evidence.’ ” Lee, 592 So.2d at 1038 (footnote omitted). “[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989); see § 12-21-12(d), Ala.Code 1975.

Discussion

Aboveboard argues that the circuit court erred in entering a summary judgment in favor of Totty because, it says, there were genuine issues of material fact concerning whether Totty (a) had signed the work order/invoice and (b) had a duty to obtain the refund from ASSI and pay the balance due to Aboveboard. We agree that there was a disputed issue of fact regarding whether Totty’s purported signature on the work order/invoice was genuine, but that issue was not material because Totty admitted that the terms of the work order/invoice reflected the terms of the oral agreement he had reached with Isbell on behalf of Aboveboard. Aboveboard’s argument that Totty had a duty to obtain the refund and pay the balance due to Aboveboard does not turn on a factual question, but on a mixed question of law and fact, namely: whether the term in the parties’ contract — that Totty’s payment was “due after refund from ASSI” — constituted a condition precedent to Totty’s duty to pay.
A condition precedent is “ ‘[a]n act or event, other than a lapse of time, that must exist or occur before a duty to perform something promised arises.’ ” Lemoine Co. of Alabama, L.L.C. v. HLH Constructors, Inc., 62 So.3d 1020, 1025 n. 5 (Ala.2010) (quoting Black’s Law Dictionary 312 (8th ed.2004)). Because the failure of the occurrence of a condition precedent is an affirmative defense, see Winkleblack v. Murphy, 811 So.2d 521, 529 (Ala.2001); Rule 8(c), Ala. R. Civ. P„ Totty bore “ ‘ “the burden of making a prima facie showing that [he was] entitled to summary judgment” ’ based on this defense.” Richardson v. Terry, 893 So.2d 277, 285 (Ala.2004) (quoting Ex parte General Motors Corp., 769 So.2d 903, 909 (Ala.1999), quoting in turn Berner v. Caldwell, 543 So.2d 686, 691 (Ala.1989) (Houston, J., concurring specially)).
By submitting his own affidavit and the affidavit of Isbell — both of which asserted that Aboveboard had assumed the risk that ASSI would not issue a refund to Totty — Totty satisfied his burden of making a prima facie showing that the “due-after-refund” provision of the parties’ contract was a condition precedent to Totty’s duty to pay. Aboveboard submitted no evidence, much less substantial evidence, to rebut that showing.
This case is similar to cases construing “pay-when-paid” clauses in construction contracts, in which the issue is whether such clauses create conditions precedent to the duty to pay or, rather, whether they constitute merely timing mechanisms for payment. See, e.g., Federal Ins. Co. v. I. Kruger, Inc., 829 So.2d 732 (Ala.2002). In *754 Kruger, our supreme court construed a clause requiring the general contractor to pay a subcontractor within 30 days after the owner’s final payment to the general contractor to be a timing mechanism rather than a condition precedent to the duty to pay. The court posed the following question:
“Can it be reasonably supposed, without express evidence in support thereof, that [the general contractor] and [the subcontractor] entered into an agreement pursuant to which [the subcontractor] was expected to perform a significant amount of work and to provide a substantial amount of materials under the terms of the subcontract, without an absolute agreement from [the general contractor] to pay [the subcontractor] for its services and materials? We think not, and nothing in the record indicates that [the subcontractor] agreed to assume the risk of nonpayment by the [owner] for events completely outside its control or influence.”
Kruger, 829 So.2d at 739 (emphasis added). In Kruger, our supreme court noted that its construction of the pay-when-paid clause was supported by the Restatement (Second) of Contracts § 227 (1981), which states, in pertinent part:
“ ‘(1) In resolving doubts as to whether an event is made a condition of an obli-gor’s duty, and as to the nature of such an event, an interpretation is preferred that will reduce the obligee’s risk of forfeiture, unless the event is within the obligee’s control or the' circumstances indicate that he has assumed the risk.’ ”
Kruger, 829 So.2d at 739. The court further noted that,
“[u]nder § 227, the preferred interpretation for the pay-when-paid clause contained in the ... subcontract is one that minimizes the risk of forfeiture to [the subcontractor], unless the circumstances indicate that [the subcontractor] assumed the risk of nonpayment. As stated above, nothing in the record indicates that [the subcontractor] assumed such a risk.”
Id. at 739-40.
In the present case, Totty submitted “express evidence” indicating that he and Isbell, as a representative of Aboveboard, understood that Aboveboard had assumed the risk that ASSI might not issue a refund to Totty. Cf. James E. Watts & Sons Contractors, Inc. v. Nabors, 484 So.2d 373, 374 (Ala.1985) (holding that provision in oral contract between contractor and subcontractor that subcontractor would not be paid until after contractor had been paid by the City of Rainsville was a condition precedent because subcontractor “testified that he understood when he went on the job that he would not be paid until [the contractor] received [its] money from the City’).
It is difficult to understand why Aboveboard would have assumed the risk of the occurrence of a condition over which it apparently had no control. See Comment b. to § 227, Restatement (Second) of Contracts, which states, in pertinent part:
“When ... the nature of the condition is such that the uncertainty is not likely to be resolved until after the obligee has relied by preparing to perform or by performing at least in part, he risks forfeiture. If the event is within his control, he will often assume this risk. If it is not tuithin his control, it is sufficiently unusual for him to assume the risk that, in case of doubt, an interpretation is prefemd under which the event is not a condition. The rule is, of course, subject to a showing of a contrary intention, and even without clear language, circumstances may show that *755 he assumed the risk of its non-occurrence.”
(Emphasis added.) Nevertheless, “ ‘[i]f two parties knowingly, clearly, and unequivocally enter into an agreement whereby they agree that the respective liability of the parties will be determined by some type of agreed-upon formula, then Alabama law will permit the enforcement of that agreement as written.’ ” Lemoine Co., 62 So.3d at 1025 (quoting Holcim (US), Inc. v. Ohio Cas. Ins. Co., 38 So.3d 722, 729 (Ala.2009)). We, therefore, affirm the summary judgment in favor of Totty.

The Cross-Appeal

“[W]hen the trial court denies an ALAA claim without stating its reasons, this court will reverse only when the record shows indisputably that the ‘action, claim, or defense’ is either ‘groundless in fact,’ see Brashear v. Spinks, [623 So.2d 321 (Ala.Civ.App.1993) ], or ‘groundless in law,’ see Sanderson Group [, Inc. v. Smith, 809 So.2d 823 (Ala.Civ.App.2001) ].” Mahoney v. Loma Alta Prop. Owners Ass’n, 52 So.3d 510, 517 (Ala.Civ.App.2009). Based on the record before us, we cannot conclude that, when Aboveboard filed its breach-of-contract action against Totty in the district court or appealed the district court’s adverse judgment to the circuit court, the action was either groundless in fact or groundless in law. Indeed, unless Aboveboard knew, when it filed the action in the district court or appealed from the district court’s judgment to the circuit court, the substance of Isbell’s rather unexpected affidavit testimony that he, on behalf of Aboveboard, had assumed the risk that ASSI would not issue a refund to Totty (and, therefore, that Aboveboard would not be paid the full contract price for its labor and materials in replacing Tott^s roof), the result of this litigation would, most likely, have been a judgment in favor of Aboveboard. We, therefore, affirm the trial court’s order denying Totty’s motion for attorney fees pursuant to the ALAA.
Totty requests an award of damages and fees pursuant to Rule 38, Ala. RApp. P.[1] That request is granted in the amount of $1,000.
APPEAL — AFFIRMED.
CROSS-APPEAL — AFFIRMED.
THOMPSON, P.J., and THOMAS and DONALDSON, JJ., concur.
MOORE, J., concurs in the result, without writing.

. Despite the fact that § 12-19-276, Ala.Code 1975, provides that "[t]he provisions of [the ALAA] are cumulative and in addition to the damages which may be awarded for a frivolous appeal pursuant to Rule 38, Alabama Rules of Appellate Procedure,” Totty does not request an attorney fee on appeal pursuant to the ALAA. Cf. Sam v. Beaird, 685 So.2d 742 (Ala.Civ.App.1996); and Fox v. Murrell, 622 So.2d 386 (Ala.Civ.App.1993).