This is an action on a guaranty agreement.
Cargill, Inc., sued Sidney B. Bledsoe upon a written guaranty. Bledsoe had entered into a written agreement personally obligating himself for the debts of Roadside Milling Company to Cargill, Inc. up to the amount of $10,000. Bledsoe filed a general denial and the special defenses of accord and satisfaction and novation.
Cargill moved for and was awarded summary judgment. This court reversed the granting of summary judgment, Bledsoe v.Cargill, Inc., 376 So.2d 735 (Ala.Civ.App. 1979), and remanded the case to the Circuit Court of Macon County for a trial. A jury trial was had on August 5, 1983 and a verdict in the amount of $9,000 in favor of plaintiff and against defendant was rendered. Judgment entered accordingly.
Defendant filed a motion for judgment n.o.v. or, in the alternative, for a new trial. Motion denied. Defendant appeals.
Bledsoe argues here that his guaranty to plaintiff had been satisfied, or that there *Page 1336 
had been a novation of the guaranty, thus releasing him from liability, that the trial court erred in admitting into evidence certain ledger sheets and testimony concerning them, in refusing two of his requested jury charges, and in denying his motions for directed verdict and judgment n.o.v. or new trial.
The record reveals the following facts: Cargill was in the business of selling and financing the sale of feeds and supplies for use in livestock production. Bledsoe was one of four incorporators and stockholders of Roadside Milling Co., a Georgia corporation. In order to enable the corporation to buy merchandise on credit from Cargill, Bledsoe, on January 18, 1969, signed a guaranty agreement with Cargill for $10,000. The three other shareholders also executed $10,000 bonds guaranteeing payment of purchases made by the corporation from Cargill.
In March 1970 Bledsoe sold his stock to the corporation. In May 1971 Gibson, a new shareholder, and the remaining three shareholders met with representatives of Cargill and, in order to obtain more credit for Roadside, signed $50,000 personal guaranties. It was understood that the $50,000 guaranties were to supersede and replace the $10,000 guaranties and that the $10,000 guaranties would be returned to the shareholders. In January 1972 the shareholders executed additional guaranty bonds in the amount of $50,000 to Cargill which included additional security by way of real estate liens. There were no discussions between the shareholders and Cargill about the $10,000 guaranty signed by Bledsoe at the time of these transactions. Bledsoe was not present when these transactions took place and he did not sign a $50,000 guaranty. In fact, he did not have any contact with Cargill after he sold his interest in Roadside Milling in 1970 until March 1973.
On March 2, 1973 Bledsoe received a letter from Cargill stating he owed Cargill $10,000 on his guaranty. There was evidence that as of March 1973 Roadside owed Cargill some $417,000 on its account. On March 7, 1973 Bledsoe notified Cargill in writing that he had sold his interest in Roadside. Bledsoe also testified at trial that this was the first time that he had informed Cargill in writing or otherwise that he did not intend to be bound by the guaranty.
In Bledsoe v. Cargill, Inc., supra, we said that "Novation is the substitution of one contract for another, the effect of which is to release or discharge from liability him who is bound by the original contract of which novation is asserted; i.e., the new independent contract extinguishes the old." Whether there has been a novation depends on the intention of the parties, which may be determined from the facts and circumstances. American National Bank Trust Co. v. Powell,235 Ala. 236, 178 So. 21 (1937).
Also, a guarantor is deemed discharged from his guaranty if the principal debt is paid or satisfied. Shur-Gain FeedDivision William Davies Co. v. Huntsville Production CreditAssociation, 372 So.2d 1317 (Ala.Civ.App. 1979).
Bledsoe contends that once he sold his interest in the corporation and once the shareholders of the corporation executed the $50,000 guaranties, there was, in effect, a substitution of the $50,000 bonds for the earlier $10,000 bonds. Moreover, once the shareholders paid on their individual guaranties, there was a satisfaction of the debt due. Thus, Bledsoe argues, he was released from any and all liability under his personal guaranty.
The evidence shows that the guaranty agreement entered into between Bledsoe and Cargill provided that Cargill could take, extend, or renew collateral from other persons "withoutchanging or releasing or discharging" Bledsoe from his obligation under the guaranty. More importantly, it stated it was "an absolute continuing guarantee which shall remain in full force and effect until the delivery to Cargill of a notice
in writing signed by [Bledsoe] terminating the said guarantee." (Emphasis added.) Bledsoe did not notify Cargill of his intention to terminate the contract *Page 1337 
until March 7, 1973. Since the agreement was a continuing guaranty, Bledsoe was bound by its terms until he gave sufficient notice of revocation. See Shur-Gain Feed Division,supra. Thus, Bledsoe was not released from liability until March 1973, unless, of course, there was a novation or substitution of the contract before March 1973. Bledsoe v.Cargill, supra.
The jury did not find a novation and there is evidence to support that conclusion. The evidence shows that Bledsoe was not a party to the substitution of the $50,000 guaranties for the $10,000 guaranties, nor did he consent to the substitution of the new guaranties for the old guaranties. Thus an essential element of a novation was not proved, i.e. the new obligation and the extinguishment of the old obligation did not include Bledsoe. See Butler v. Walton, 36 Ala. App. 319, 56 So.2d 369
(Ala.Ct.App. 1951). The evidence thus fails to show that the parties intended that the new guaranties were supposed to discharge Bledsoe from his $10,000 guaranty.
As to the satisfaction of the debt due and owing at the time Bledsoe informed Cargill that he was no longer bound by the guaranty, it does appear that the other shareholders did pay on the indebtedness owed by Roadside Milling.
Whether there has been a satisfaction of the indebtedness of Roadside Milling by the other shareholders so as to relieve Bledsoe of his obligation depends upon the state of the evidence. The evidence shows that at the time Cargill made demand on Bledsoe in March 1973 for payment under his guaranty the outstanding indebtedness of Roadside was in excess of $400,000. Between 1973 and 1974, when Cargill filed its action against Bledsoe, the other shareholders had reduced Roadside's indebtedness to about $71,000. At the time of trial, the indebtedness had increased to about $82,000 due to the addition of interest. We conclude that the evidence supports the jury's finding that the debt upon which Bledsoe was sued had not been satisfied by the other shareholders.
We therefore hold that the defendant's motion for directed verdict and motion for judgment n.o.v. or, in the alternative, for a new trial were properly overruled. First, there was ample evidence to the effect that defendant was obligated to plaintiff on his personal guaranty. Second, the verdict is not contrary to the great weight of the evidence and the motion for new trial was properly overruled. See Walker v. Cardwell,348 So.2d 1049 (Ala. 1977).
Defendant's next contention is that the trial court erred in refusing two of his requested charges to the jury. The first requested charge asked for a verdict if the jury found that Cargill had accepted the new bonds as substitutes for the old bonds. The second requested charge asked for a verdict if the jury found that there was no written release of the guaranty but that Cargill had intended to substitute the new bonds for the old bonds.
The oral charge of the trial court is, in pertinent part, as follows:
 "[S]hould you be satisfied that a . . . new contract of guaranty was substituted for the old contract of guaranty with the intention of releasing Mr. Bledsoe, then . . . you could find that there had been a release of Mr. Bledsoe."
Refused requested charges which are fairly and substantially covered by the trial court's oral charge cannot be the basis for reversible error. M.C. West, Inc. v. Battaglia,386 So.2d 443 (Ala.Civ.App. 1980); rule 51, Alabama Rules of Civil Procedure. No reversible error here.
Defendant's final contention is that the trial court erred in admitting into evidence certain business ledger sheets showing the transactions of Roadside with Cargill.
Any writing or record made as a memorandum or record of any transaction is admissible into evidence as proof of said transaction if said record was made in the regular course of any business. Rule 44 (h), A.R.Civ.P. The testimony shows that the ledger sheets in question were records of Cargill and that they were kept in the ordinary course of business. The *Page 1338 
trial court did not commit reversible error by admitting these business records into evidence. Carroll v. State, 370 So.2d 749
(Ala.Cr.App.), cert. denied, 370 So.2d 761 (Ala. 1979).
No reversible error having been shown, the judgment of the trial court is affirmed.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.