BOLIN, Justice.
Safeco Insurance Company of America (“Safeco”) and Johnson Controls, Inc. (“JCI”), appeal from a summary judgment entered in favor of Graybar Electric Company, Inc. (“Graybar”).

Facts and Procedural History

In October 2006, JCI entered into a contract with the Birmingham Airport Authority to perform work in connection with upgrades to the closed-circuit television system at the airport. As the general contractor for the project, JCI was required to furnish surety bonds, including a payment bond. JCI procured the bonds from Safeco, as surety on the project.
In performing the work on the project, JCI entered into a subcontract with TDC Systems Integration, Inc. (“TDC”). Gray-bar supplied electrical parts and equipment to TDC on credit pursuant to a contract. TDC failed to pay Graybar for the materials.
On January 10, 2008, Graybar sued TDC and its president, Antonio Dozier, who had signed a personal guaranty on behalf of TDC, in Georgia. Graybar alleged that TDC and its president owed Graybar $255,639.27 under a credit agreement and the personal guaranty. This amount included amounts Graybar alleged TDC owed on the airport project in Birmingham and on a project in New Orleans.
On April 18, 2008, Graybar notified JCI and Safeco by certified mail, pursuant to the payment bond and pursuant to § 39-1-1, Ala.Code 1975, concerning bonds required of persons contracting for public works, that TDC had failed to pay for materials and supplies sold to TDC for work performed on the airport project. The notice also provided that Graybar would seek reasonable attorney fees and interest in accordance with § 39 — 1—1(b). In the notice, Graybar stated that a complete set of Graybar’s invoices and proofs of delivery compiled to date containing approximately 400 pages would be sent to Safeco and JCI and that TDC had already been provided with a copy of those documents. On April 23, 2008, those documents were sent to Safeco, JCI, and the Birmingham Airport Authority. JCI did not respond. On May 28, 2008, Safeco responded to the notice, denying Graybar’s claim on the grounds that Graybar had not complied with the notice requirements of § 39-1-1 and that the invoices and other materials sent by Graybar were insufficient to satisfy Safeco that the materials TDC ordered and allegedly failed to pay for were actually used on the airport project. Safeco contended:
“TDC admits that they ordered the materials/supplies, received the good[s] and did not pay for them. They did not indicate which job the goods were used on or whether they were used at all. They admitted to ordering and receiving only. At no time, in any of the court documents!,] did they indicate that any of the goods were used on the Birmingham job. Thus, the provided court documents fail to shed any light on the subject.”
On October 3, 2008, Graybar filed a verified complaint for money damages against Safeco and JCI (hereinafter collectively referred to as “the defendants”) in the Jef *652 ferson Circuit Court. Graybar alleged that TDC failed to pay for materials used in the airport project in the amount of $202,076.22. Attached to the complaint, among other things, was an affidavit from TDC’s president stating that TDC had purchased materials having a total value of $202,076.22 from Graybar for use on the airport project and that TDC had not paid for the materials. Also, there was an affidavit from Graybar’s financial officer attesting to the amount of money spent on attorney fees and costs in trying to obtain satisfaction under the payment bond. On November 26, 2008, the defendants filed an answer denying Graybar’s claims.
On February 26, 2009, Graybar entered into a settlement agreement with TDC and its president in the lawsuit that had been filed in Georgia. The settlement provided as follows:
“This Settlement Agreement is entered into as of this 26th day of February, 2009, between Plaintiff, Graybar Electric Company, Inc., (herein ‘Gray-bar’), and Defendants, TDC Systems Integration, Inc. and Antonio Dozier, jointly and severally (herein ‘Defendants’).
“WHEREAS, Graybar filed a Complaint against Defendants in this court seeking to recover money owed to Gray-bar for materials supplied to TDC Systems Integration, Inc., in connection with two (2) construction projects, namely, Project NOIA SOC-1542 Access Control, Security Network Integration & Electrical Systems, at the New Orleans, Louisiana Airport (the ‘New Orleans Job’) and Closed Circuit Television (CCTV) System Upgrade Project at the Birmingham International Airport, Birmingham, Alabama (the ‘Birmingham Job’); and
“WHEREAS, Defendants desire to settle the above-captioned [Georgia] civil action and reduce or eliminate expenses of litigation; and
“WHEREAS, Defendants acknowledge and agree that the total principal amount due to Graybar is $233,996.79, comprised of the principal amount of $31,920.57 due on the New Orleans Job and the principal amount of $202,076.22 due on the Birmingham Job; and
“WHEREAS, the parties desire to stay the captioned civil action pending payment by Defendants to Graybar of said principal amount plus interest thereon as hereinafter provided.
“NOW THEREFORE, for and in consideration of Graybar’s agreement under the terms of this Settlement Agreement to forbear from the entry, enforcement and collection of the Consent Judgment, a copy of which is attached hereto as Exhibit ‘A,’ and specifically made a part hereof. Defendants agree and consent as follows:
“1.
“Defendants shall consent to a Consent Judgment by and through Defendants’ counsel of record in the above-captioned civil action granting Graybar judgment against Defendants, jointly and severally, for. the principal amount of $233,996.79, plus accrued interest thereon, or so much thereof as may from time to time remain outstanding and unpaid, at the rate hereinafter set forth from May 15, 2009, until said Consent Judgment is entered in the above captioned civil action, and thereafter at the rate provided by law until the unpaid principal amount with all interest accrued thereon is paid in full, together with reasonable attorney’s fees, and costs and expenses incurred in connection with the above referenced civil action. The original of said Consent Judgment shall be surrendered to Graybar or *653 its attorney. Graybar or its attorney, as applicable, will hold the Consent Judgment and only have said Judgment presented to the Court for signature and entered in the above captioned civil action if Defendants default in the terms and conditions of this Settlement Agreement.
“2.
“In further consideration of Graybar’s agreement and forbearance as aforesaid, Defendants agree to pay to Graybar the principal amount of $283,996.76 plus accrued interest at the rate hereinafter set forth in accordance with the following terms and conditions:
“Said principal sum, or the amount outstanding and unpaid from time to time, shall bear interest at the rate of five and one-quarter per cent (5 1/4%) per annum from May 15, 2009. Interest shall be computed on a 365-day year simple interest basis and shall be computed on the daily outstanding principal balance. Said principal sum from time to time outstanding and unpaid, with accrued interest thereon, shall be due and payable monthly in installments of principal and of interest, commencing May 15, 2009, in accordance with the payment schedule attached hereto as Exhibit ‘B’ and made a part hereof, with the final installment of principal and of interest being due and payable on October 10, 2010. ' Interest at the rate aforesaid on said principal sum from time to time outstanding and unpaid shall continue until said principal sum and all accrued interest thereon have been paid in full or until said Consent Judgment is entered in the above captioned civil action, whichever event first occurs. Time is of the essence of this Agreement.
“Payments as made shall be applied first to the payment of interest on the principal sum, or the balance thereof remaining from time to time unpaid, and the balance of said payments shall be applied to principal/ All payments shall be made by bank check in lawful money of the United States of America which shall at the time of payment be legal tender in payment of all debts, public and private, and shall be payable to Graybar Electric Company, Inc., and mailed to Graybar Electric Company, Inc., Attention: John Kahne, Director Finance, 2050 Nancy Hanks Drive, Nor-cross, Georgia 30071-2956.
“It is acknowledged and agreed between the parties that the principal amount due and payable for the New Orleans Job is $31,920.57 and that upon payment by Defendants of the first payment due hereunder on May 15, 2009 in accordance with the attached payment schedule, the principal portion of said first payment equal to said $31,920.57 amount will be deemed the full .and final payment due by Defendants to Graybar in connection with the New Orleans Job. The principal portion of said first payment remaining, that is $5,226.26, will be credited against the principal amount due by Defendant to Graybar for the Birmingham Job.
“3.
“Provided, however, in the event Defendants default in any of the terms and conditions of this Settlement Agreement, and such default is not cured within five (5) days after receipt of written notice from Graybar to Defendants as hereinafter provided, then Graybar immediately thereafter shall have the right to present the Consent Judgment to the court for signature and to have said Judgment entered in the above captioned civil action, and thereafter the right to enforce and collect the unpaid principal balance with accrued interest thereon at the rate *654 of five and one-quarter per cent (5 1/4%) per annum from May 15, 2009 to the date said Consent Judgment is entered in the above captioned civil action, and thereafter at the rate as provided by law until said unpaid principal amount and all accrued interest thereon are paid in full, together with reasonable attorney’s fees and costs.and expenses incurred in connection with the captioned civil action.
“Any notice to Defendants shall be in writing and deemed given to Defendants by delivery of the same to Defendants’ counsel.... Rejection or other refusal to accept any notice shall be deemed to be receipt of said notice.
“4.
“The parties further agree that the captioned civil action shall be stayed and not subject to dismissal for lack of prosecution pending payment under this Set-tlément Agreement. The parties further agree that there are no intended third party beneficiaries to this Settlement Agreement and do not intend this Settlement Agreement to benefit any third party. Further, this Settlement Agreement encompasses the entire agreement between the parties and neither party has relied upon any implied or express representations not contained herein.”
On March 11, 2009, the trial court in the Alabama action held a status conference. On March 17, 2009, Graybar filed a notice of the settlement agreement in the Georgia action with the trial court in the present case. On May 14, 2009, the trial court conducted a second status conference. The defendants had not sought any discovery from Graybar. On May 20, 2009, the trial court set the case for trial on October 19, 2009.
On August 27, 2009, the defendants moved for a summary judgment on the ground that the settlement agreement in the Georgia action was a novation and that it extinguished Graybar’s assertion of any claim arising out of Graybar’s contract with TDC and that the settlement agreement was a complete defense to Graybar’s claims under the payment bond issued by Safeco. On October 1, 2009, Graybar filed a cross-motion for a summary judgment. Attached to Graybar’s motion were updated affidavits from TDC’s president and Graybar’s financial officer.
The trial court held a hearing on the summary-judgment motions, and on October 22, 2009, denied the defendants’ motion and granted Graybar’s cross-motion. Specifically, the trial court stated, in denying Safeco’s motion, that Bledsoe v. Car-gill, Inc., 452 So.2d 1334 (Ala.Civ.App. 1984), holds that the intention of the parties is determinativé of whether there has been a novation or a substitution of one contract for another. The trial court, relying on Bledsoe, held that the parties to the settlement agreement — Graybar, TDC, and its president — did not intend to benefit any third party and that the intent of the parties was not to substitute the settlement agreement for rights under the payment bond issued by Safeco. With regard to the Graybar’s summary-judgment motion, the trial court stated that the bond remained in effect and that there was no dispute as to the amount still owed. The trial court awarded attorney fees to Gray-bar. The defendants appeal.

Standard of Review

Our standard of review of a summary judgment is well settled:
“ ‘The standard of review applicable to a summary judgment is the same as the standard for granting the motion....’ McClendon v. Mountain Top Indoor Flea Market, Inc., 601 So.2d 957, 958 (Ala.1992).
*655 ‘“A summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. The burden is on the moving party to make a prima facie showing that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. In determining whether the movant has carried that burden, the court is to view the evidence in a light most favorable to the nonmoving party and to draw all reasonable inferences in favor of that party. To defeat a properly supported summary judgment motion, the nonmoving party.must present “substantial evidence” creating a genuine issue of material fact — “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” Ala.Code 1975, § 12-21-12; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).’
“Capital Alliance Ins. Co. v. Thorough-Clean, Inc., 639 So.2d 1349, 1350 (Ala.1994). Questions of law are reviewed de novo. Alabama Republican Party v. McGinley, 893 So.2d- 337, 342 (Ala. 2004).”
Pritchett v. ICN Med. Alliance, Inc., 938 So.2d 933, (Ala.2006).

Analysis

The defendants argue that the trial court erred in denying their summary-judgment motion because, they assert, the settlement agreement between Graybar and TDC in the Georgia action was a novation and the novation extinguished Graybar’s claims under the payment bond.
At the outset, we note that this case arises under § 39-1-1 et seq., Ala. Code 1975, commonly referred to as Alabama’s little Miller Act. Federal Ins. Co. v. I. Kruger, Inc., 829 So.2d 732, 734 (Ala. 2002). The Alabama statute is patterned after the Federal Miller Act, now codified at 40 U.S.C, §§ 3131-3133. “The construction given to the federal act has been adopted in Alabama, unless otherwise noted.” Kruger, 829 So.2d at 734 n. 1. Generally, when a person has provided labor or materials or has supplied services on a private construction project, the person is entitled under § 35-11-210, Ala.Code 1975, the mechanic’s or materialman’s lien statute, to file a lien against the private property and subsequently to foreclose on the property, if not paid for those services. However, § 35-11-210 does not apply to public property. Martin v. Holtyille High School Bldg., 226 Ala. 45, 145 So. 491 (1933)(public-school building was not subject to foreclosure sale under the predecessor statute to § 35-11-210). The Alabama Legislature provided a remedy in 1927. when it codified specific provisions to ensure that materialmen receive full payment for labor or materials supplied on a public-works project. § 39-1-1. Alabama’s statute was patterned after a federal act enacted in 1894 called the Heard Act. Ch. 280, 28 Stat. 278 (1894) (since repealed); see also State v. Southern Sur. Co., 221 Ala. 113, 127 So. 805 (1930) (discussing the essential provisions' of the state and federal payment-bond statutes existing in 1930). Alabama first amended its public-works-payment-bond statute in 1935 to pattern it after the federal act called the Miller Act (enacted in 1935 to rectify inadequate protections in the Heard Act). See 40 U.S.C. §§ 3131-3133 (formerly 40 U.S.C. §§ 270a-270d).
“[T]he purpose of a payment bond required under the little Miller Act is *656 to ‘shift the ultímate risk of nonpayment from workmen and suppliers to the surety.’” Kruger, 829 So.2d at 736 (quoting American Sur. Co. v. Hinds, 260 F.2d 366, 368 (10th Cir.1958)). “The purpose of the [little Miller] act is to provide security for those who furnish labor and material in performance of government contracts as a substitute for unavailable lien rights, and is liberally construed to accomplish this purpose.” Headley v. Housing Auth. of Prattville, 347 So.2d 532, 535 (Ala.Civ.App.1977).
“The legal standard for determining whether a supplier has relinquished its statutory rights is firmly established: absent a novation or clear expression to the contrary, a supplier does not forfeit its right to sue under the public works statute. United States v. Forrester, 441 F.2d 779, 782 (5th Cir.1971); Warrior Constructors Inc. v. Harders, Inc., 387 F.2d 727, 729 (5th Cir.1967).
“ ‘The right to sue on a surety bond is a'right created by statute, and in the absence of a novation or clear expression to the contrary, the contention that there has been a waiver or release of that right must fail.’
“Forrester, 441 F.2d at 782;. Wamor, 387 F.2d at 729. Thus, absent a novation, waiver, estoppel, or other clear and explicit relinquishment of the statutory right, a supplier is entitled to pursue payment under a bond. [United States ex rel. Clark-Fontana Paint Co. v.] Glassman, 397 F.2d [8] at 10 [ (4th Cir.1968) ] (express waiver must be both clear and explicit); see also Forrester, 441 F.2d at. 783 (estoppel a valid defense under the Miller Act); Glassman, 397 F.2d at 11 (same); Graybar Elec. Co. v. John A. Volpe Constr. Co., 387 F.2d 55, 59 (5th Cir.1967) (same); United States v. James Stewart Co., 336 F.2d 777, 779 (9th Cir.1964) (same).”
Trane Co. v. Whitehurst-Lassen Constr. Co., 881 F.2d 996, 1003 (11th Cir.1989).
“A novation is the substitution of one contract for another; a novation releases the party bound by the original contract. A novation extinguishes the preexisting obligation.” Golden v. Bank of Tallas see, 639 So.2d 1366, 1369 (Ala.1994). “Novation requires: ‘(1) a previous valid obligation; (2) an agreement of the parties thereto to a new contract or obligation; (3) an agreement that it is an extinguishment of' the old contract or obligation; and (4) the hew contract or obligation must be a valid one between the parties thereto.’ ” Boh Bros. Constr. Co. v. Nelson, 730 So.2d 132, 134 (Ala.1999) (quoting Warrior Drilling & Eng’g Co. v. King, 446 So.2d 31, 33 (Ala.1984)).
 Graybar cites Medley v. South-Trust Bank of the Quad Cities, 500 So.2d 1075 (Ala.1986), for the proposition that a novation is a substituted contract that includes a party who was neither the obligor nor the obligee to the original duty. The appellate courts of this State have used the terms “novation” and “substituted contract” interchangeably. However, there is a technical distinction: “a substituted contract is one that is accepted in satisfaction of the original contract .and thereby discharges it, while a novation is a substituted contract that includes a party who was not part of the original contract.” 66 C.J.S. Novation § 1 (2009) (footnotes omitted). In the present case, it is obvious that the issues is whether a substituted contract was accepted in satisfaction of the original contract.
The defendants argue that Bledsoe v. Cargiü, Inc., 452 So.2d 1334 (Ala.Civ.App. 1984), cited by the trial court, is inapposite here because the Bledsoe court rejected the argument that the defendant was not a party to the subsequent agreement and, therefore, the subsequent agreement could *657 not replace the prior agreement to which the defendant was a party. The defendants contend that in the present case both the prior agreement and the present agreement were between Graybar and TDC and that they are relying on the substitution of the later agreement for the earlier agreement between those same parties that created the substituted contract upon which the defendants rely.
In Bledsoe, supra, Cargill, Inc., supplied feed and supplies for use in livestock production. Sidney Bledsoe was a shareholder in a corporation with three other shareholders. ' All the shareholders had signed personal guaranties in the amount of $10,000 each to obtain credit with Cargill. The guaranty agreements provided that Cargill could take, extend, or renew collateral from other persons without changing or releasing or discharging Bledsoe from his obligation under the guaranty agreement, and that the guaranty was an absolute continuing guaranty that would remain in full force and effect until the delivery to Cargill of a notice in writing signed by Bledsoe terminating the guaranty agreement.. Subsequently, Bledsoe sold his shares in the corporation. Bled-soe did not notify Cargill of his intent to terminate the guaranty agreement. The remaining shareholders then executed new personal guaranty agreements in the amount of $50,000 each with Cargill. The new guaranty agreements were expressly intended by Cargill and the remaining shareholders to be substituted for their original guaranty agreements. At some point after the new guaranty agreements were executed, Bledsoe received a letter from Cargill informing him that the corporation was in debt and that he owed Cargill $10,000 on his personal guaranty. Bledsoe refused to pay, and Cargill sued. Bledsoe argued that once he sold his interest in the corporation and once the shareholders of the corporation executed the new guaranty agreements for $50,000, there was, in effect, a substitution of the $50,000 guaranties for the earlier $10,000 guaranties. The Bledsoe court held that Bledsoe was not a party to the substitution of the $50,000 guaranties for the $10,000 guaranties nor did he consent to the substitution of the new guaranties for the old guaranties. The court concluded that evidence failed to show that the parties intended that the new guaranties discharge Bledsoe from his $10,000 guaranty.
In the present case, the trial court correctly cites Bledsoe for the proposition that whether there has been a substituted contract depends upon the intention of the parties, which may be determined by the facts and circumstances. The trial court expressly found that Graybar and TDC, as parties to the settlement agreement, did not intend to benefit any third party and that the intent of the parties was not to substitute the settlement agreement for rights arising under the payment bond issued by Safeco. Without, citing any authority, the defendants argue that the settlement agreement amounts to a substituted contract for the payment bond because, they say, the terms substantially and materially alter the terms of the original agreement as to the amount of interest that may be charged and when payment may be demanded and because the president of TDC surrendered any defenses as a guarantor and became jointly and severally liable for the debt. The defendants’ argument ignores Graybar and TDC’s express statements in the settlement agreement that TDC was not released from the previous obligation to pay for the materials supplied for the airport project and that the settlement agreement was not intended to benefit any third party, which would clearly include the defendants, who were *658 nonparties to the settlement agreement.[1]
The defendants cite Trane, 881 F.2d 996, supra, in support of their position that there was a novation in the context of the little Miller Act. In Trane, 881 F.2d 996, supra, a board of education had entered into a contract for the renovation of a school cafeteria. The prime contractor entered into a payment bond with a surety to secure payment to persons furnishing materials for the project as required by Ala. Code 1975, § 39-1-1. Trane, a supplier of air-conditioning and heating equipment, successfully bid to provide equipment to the mechanical subcontractor. The mechanical subcontractor owed Trane for another job unrelated to the school cafeteria and was 60 days past due on that debt. Trane ordered the equipment for the school cafeteria, which had to be manufactured, but ordered that the shipment be held until a “credit hold” was lifted. When the equipment was ready to ship, Trane ultimately contacted the prime contractor and told it that Trane would require a purchase order directly from the prime contractor before the equipment would be shipped, which the prime contractor provided. Trane shipped the equipment but was not paid. Subsequently, the prime contractor terminated its contract with the mechanical subcontractor but did not inform Trane. The prime contractor entered into a settlement with the mechanical subcontractor, but Trane was not paid.
The prime contractor argued that Trane had relinquished its statutory right to payment under the payment bond because Trane had entered into a new agreement with the prime contractor in place of the preexisting agreement with the mechanical subcontractor; that it had waived its statutory right by requesting a purchase order from the prime contractor; or that it was estopped from asserting its right to payment because the prime contractor had overpaid the mechanical subcontractor in its settlement agreement. With regard to its novation, the court held that there was no evidence indicating that there had been no mutual assent, consideration, or definitive terms to support the prime contractor’s argument that there was a new contract. Trane still had a commitment to provide the mechanical subcontractor with air-conditioning ■ and heating equipment, and Trane did not intend the new purchase order to substitute for the prior agreement. The court held that Trane’s request for a. new purchase order was akin to a request for additional security and that it did not constitute a waiver of its statutory rights under the little Miller Act. In the present case, the settlement agreement did not release TDC from its obligation to pay the full contract price.
We also find instructive with regard to the Miller Act Liebman v. United States ex rel. California Electric Supply Co., 153 F.2d 350 (9th Cir.1946). ' In Liebman, California Electric supplied electrical fixtures and materials to a subcontractor for a public-works project involving an airport. The prime contractor obtained a payment bond from a surety. The subcontractor did not pay for the fixtures and materials, and California Electric filed a claim under the Miller Act. Subsequently, the subcontractor filed a petition in bankruptcy. California Electric filed a claim against the bankrupt’s estate and asserted that it was a priority claim under the Miller Act. The referee refused to rule on the claim because the funds were not in court, and the prime contractor refused to pay over the amount owed the subcontractor until there was an order directing to whom it was to be' paid. To avoid a suit by the bankruptcy trustee, the parties entered into a writ *659 ten stipulation, which stated the circumstances under which the controverted sum was to be deposited into the bankruptcy-estate. The referee determined that California Electric’s claim was not a priority. California Electric then sued the prime contractor and the surety. The prime contractor and surety argued that, the stipulation constituted a release of the obligation under the Miller Act. The court stated:
“The language of the stipulation is a mere recital of the circumstances under which the controverted sum was deposited with bankruptcy court. As the lower court stated there is no language in the stipulation expressing or suggesting a release from the obligation under the surety bond. The record discloses no written or oral waiver or release of right under the Miller Act. The purpose of the Miller Act is to protect those who furnish materials or labor or both for public buildings and to insure the payment in full for such materials and .labor. The right to sue on a surety bond is a right created by statute, and in the absence of a novation, the appellants’ contention that there was a waiver or release of that right must fail.
“Appellants urge that the California Electric Supply Company by entering into the stipulation is now estopped from seeking relief on the surety bond. Because they relied upon the stipulation as a waiver of rights to sue on the payment bond, appellants claim they have placed themselves in the position where they will have to pay this obligation twice. The materialman here receives payment but once. Appellants’ position has not been changed prejudicially. The situation here would be the same if there had been no stipulation at all.”
153 F.2d at 352.
The defendants cite City of Philadelphia v. Joseph S. Smith Roofing,, Inc., 410 Pa.Super. 95, 599 A.2d 222 (1991). However, that case is clearly distinguishable from the present case. In Smith Roofing, the general contractor for a public-works project had entered into a subcontract with a roofer. The roofer had entered into a contract with a supplier. The roofer failed to pay the supplier, and the. supplier then sued the roofer. Subsequently, the supplier entered into a settlement agreement with the roofer, agreeing to accept 25 percent of the debt owed it. The settlement agreement released all guarantors and sureties of the roofer’s debt. The supplier sought to recover the balance, under the payment bond issued by the surety for the general contractor. . The court held that, under the terms of the settlement agreement, the debt owed the supplier for the materials used had been fully satisfied and the surety discharged of any fluty. In the present case, the settlement agreement provided that Graybar “forbear from the entry, enforcement, and collection of the consent judgment” in exchange for TDC’s agreement to consent to the entry of the consent judgment and set out TDC’s obligation to pay the entire amount owed of debt owed. Also, unlike the settlement agreement in Smith Roofing, the settlement agreement here did not discharge the surety.'
Next, the defendants argue that the trial court erred in entering a summary judgment in favor of Graybar. Specifically, the defendants argue that Graybar failed to meet the requirements under Alabama law for recovery under the bond because, they argue, Graybár’s claims included materials from another project, Graybar did not prove its good-faith belief that the materials were for the Birmingham airport project, and Graybar’s negligence precluded a summary judgment in its favor.
In order to be entitled to a summary -judgment, Graybar had to present *660 substantial evidence showing that all the elements of its claim under the little Miller Act had been met. In A.G. Gaston Construction Co. v. Hicks, 674 So.2d 545 (Ala.Civ.App.1995), the Court of Civil Appeals quoted the United States Court of Appeals for the Eleventh Circuit and identified four elements that must be proven before a supplier or a subcontractor is entitled to recover under a payment bond issued pursuant to the little Miller Act:
“ ‘(1) that materials or labor were supplied for work on the public project at issue; (2) that the supplier was not paid for the materials or labor supplied; (3) that the supplier had a good faith belief that the materials furnished were for the project in question; and (4) that the jurisdictional requisites had been met.’ ”
674 So.2d at 547 (quoting United States ex rel. Krupp Steel Prods., Inc. v. Aetna Ins. Co., 831 F.2d 978, 980 (11th Cir.1987)).
Section 39-l-l(b) provides:
“(b) Any person that has furnished labor, materials, or supplies for or in the prosecution of a public work and payment has not been made may institute a civil action upon the payment bond and have their rights and claims adjudicated in a civil action and judgment entered thereon. Notwithstanding the foregoing, a civil action shall not be instituted on the bond until 45 days after written notice to the surety of the amount claimed to be due and the nature of the claim. The civil action shall be commenced not later than one year from the date of final settlement of the contract. The giving of notice by registered or certified mail, postage prepaid, addressed to the surety at any of its places of business or offices shall be deemed sufficient under this section. In the event the surety or contractor fails to pay the claim in full within 45 days from the mailing of the notice, then the person or persons may recover from the contractor and surety, in addition to the amount of the claim, a reasonable attorney’s fee based on the result, together with interest on the claim from the date of the notice.”
The defendants argue that they submitted two invoices from Graybar to TDC in opposition to Graybar’s summary-judgment motion that show that Graybar had included in its invoices materials that were not for the Birmingham airport project and that, because there was evidence indicating that materials for which Graybar was seeking payment under the payment bond were used in other projects, and because some of the materials were generic in nature and could have been used on any project, then it was doubtful that the president of TDC’s recollections would be accurate as to where the materials had been used, and Graybar could not show a good-faith belief that the materials were for the Birmingham project.
In S.T. Bunn Construction Co. v. Cata-phote, Inc., 621 So.2d 1325 (Ala.Civ.App.1993), the Court of Civil Appeals addressed “good faith” in the context of a claim under the little Miller Act. A supplier to a public-works project was not paid, and it sought relief against the general contractor and the surety. The supplier filed a summary-judgment motion asserting that it reasonably believed in good faith that all the supplies sent to the subcontractor were intended for use on the project and that the subcontractor never advised it that some of the materials were to be used on other projects. The supplier further asserted that, because it neither knew of nor consented to the use of some of the materials for other projects, it was entitled to recover for the materials it had shipped to the subcontractor. In response, the general contractor submitted an affidavit stating that it had paid for *661 certain materials used in the project and that the remainder of the materials provided had not been delivered to the project site. The general contractor’s affidavit called the supplier’s good faith into question, making summary judgment inappropriate.
In the present case, unlike S.T. Bunn, the affidavits submitted in support of Graybar’s summary-judgment motion were unequivocal that the materials were used in the Birmingham airport project. The defendants challenge the recollections of TDC’s president, yet they did not seek to depose him, despite having ample time to have done so, and no affidavit was filed pursuant to Rule 56(f), Ala. R. Civ. P.[2] Additionally, the two invoices attached to the defendants’ response to Graybar’s summary-judgment motion, without more, fail to show that a genuine issue of fact exists as to Graybar’s little Miller claim. The two invoices that appear to be from Graybar to TDC include one shipment to TDC’s home office. This would not contradict the president’s sworn statements that the materials were used in the Birmingham airport project. Section 39-1-1 provides that the materials be supplied for use in a public-works project — not that the materials be shipped to the project site. "[A] materialman need not prove that his material was actually installed by the subcontractor. ... He may recover upon showing a reasonable, good faith belief that the subcontractor intended the material for the government job.” United States ex rel. Pomona Tile Mfg. Co. v. Kelley, 456 F.2d 148, 151-52 (9th Cir.1972) (citations omitted). We recognize that the phrase “good faith belief that the materials would be used for the project” is not used in the affidavits attached to Graybar’s summary-judgment motion; however, there ; is evidence through the affidavits that Graybar intended for the materials to be used in the Birmingham airport project and that the materials were indeed used in the project.
The defendants argue that Gray-bar’s own negligence in continuing to supply TDC with materials caused or contributed to Graybar’s failure to be paid and, thus, precludes Graybar from recovering under the payment bond. The defendants cite authority arguing that summary judgment is inappropriate when contributory negligence is at issue. However, contributory negligence is not a defense to a claim under the Miller Act. Essentially, the defendants are arguing estoppel, which is a defense to a claim under the Miller Act. See Trane, supra.
In Graybar Electric Co. v. John A. Volpe Construction Co., 387 F.2d 55 (5th Cir.1967), the prime contractor had issued checks to the subcontractor that had been endorsed to, the order of the supplier and then endorsed back to the subcontractor by the supplier. The general contractor made progress payments to the subcontractor, provided that the subcontractor would endorse the check to each supplier so that the money would not be diverted to other uses.. Pursuant to a prior understanding between the subcontractor and the supplier, of which the general contractor had no knowledge, the supplier would endorse the checks back to the subcontractor. The general contractor argued that the supplier was obligated to credit the amount of the checks against the amount owed by the subcontractor. The court agreed with the general contractor and found that the general contractor did *662 everything it reasonably could to protect itself, short of taking over the subcontractor’s business. Under those circumstances, the supplier was estopped from seeking payment under the bond.
In United States ex rel. Gulfport Piping Co. v. Monaco & Son, Inc., 336 F.2d 636 (4th Cir.1964), the supplier was estopped from recovering under a payment bond because a third party had falsely claimed to be the supplier and the contractor had paid the third party. The real supplier knew of and acquiesced in the false representation of the third party. Here, the defendants’ position is that continuing to send materials to a subcontractor who has been delinquent for several months in paying for materials to be used in a public-works project supports estop-pel. We disagree. Furthermore, the little Miller Act, like the Miller Act, is highly remedial in nature and is entitled to a liberal construction and application in order to effectuate its purpose.
Last, the defendants argue that the court erred in awarding Graybar attorney fees and interest because recovery under the little Miller Act is not absolute and a claimant must adequately prove its entitlement to the damages it seeks. The defendants argue that, because they presented meritorious defenses, Graybar was not entitled to recover at all under the little Miller Act. The defendants argue that the amount claimed to be due must be a valid and correct amount, because it is specifically the nonpáyment of that amount that gives the court the discretion to award attorney fees and interest. We have already addressed the validity of Graybar’s claim under the little Miller Act.
The defendants further argue that Graybar did .not present proof that the amount of attorney fees requested was reasonable. Safeco and JCI were notified on April 18, 2008, of Graybar’s claim for unpaid materials under the little Miller Act along with its claim for attorney fees. Section 39-1-1 (b) of the little Miller Act provides that a supplier may recover a reasonable attorney fee. In support of its request for attorney fees, Graybar attached to its cross-motion for a summary judgment an affidavit setting out the amount of attorney fees Graybar had paid. The defendants did not file anything to controvert the amount requested. Instead, the defendants argued to the trial court that they would be forced to seek discovery if the trial court ruled in favor of Graybar on its summary-judgment motion.[3] In their brief to this Court, the defendants argue: *663 (Defendants’ brief, p. 38.) The case cited by the defendants, Tolar Construction, LLC v. Kean Electric Co., 944 So.2d 138 (Ala.2006), did not involve the little Miller Act, but instead involved the Prompt Payment Act (§ 8-29-1, Ala.Code 1975), also known as the Deborah K. Miller Act. Also, Tolar did not involve a summary judgment but involved a jury trial in which the trial court charged the jury that the court would determine the amount of attorney fees owed depending on the jury’s verdict. Accordingly, we cannot say that the trial court exceeded its discretion in awarding Graybar attorney fees.
*662 “In their response to Graybar’s summary judgment motion, Safeco and JCI pointed out to the trial court that discovery and a hearing on attorney’s fees held after the court ruled on the merits of the summary judgment motions would be appropriate. Otherwise, Safe-co and JCI would have been compelled to seek discovery on opposing counsel’s fees, including time records, before the merits of a case were adjudicated. See Tolar Constr., LLC v. Kean Elec. Co., 944 So.2d 138, 143 (Ala.2006) (‘The trial court entered a judgment on this verdict on March 23 and set a hearing on May 2 for “the determination of attorney’s fees, litigation costs and interest, to be assessed against [Tolar].” ’) (C. 196-197.)”
*663 Based on the foregoing, We affirm the judgment of the trial court.
AFFIRMED.
LYONS, STUART, SMITH, PARKER, and SHAW, JJ., concur.
MURDOCK, J., concurs specially.
COBB, C.J., recuses herself.

. The defendants cite no authority regarding a surety’s status as a third-party beneficiary.

. Rule 56(f) protects against the premature or improvident entry of a summary judgment by permitting a nonmovant to file an affidavit stating how discovery would enable the non-movant to effectively oppose summary judgment. '•

. The defendants did not file an affidavit pursuant to Rule 56(f), Ala. R. Civ. P., which, as noted previously, protects against the premature or improvident entry of a summary judgment by permitting a nonmovant to file an affidavit stating how discovery would enable the nonmovant to effectively oppose the entry of summary judgment.