SHAW, Justice
(dissenting).
I respectfully dissent.
This case involves an attempt by Johnson Controls, Inc. (“JCI”), to collect payment for certain equipment and materials it provided to a public-works project designed to renovate the medical-center facility owned by the Roanoke Healthcare Authority (“Roanoke Healthcare”), a public entity.
Generally, when a person has provided labor or materials to a private construction project, that person is entitled, under Ala. Code 1975, § 35-11-210, to a lien against that private property. Safeco Ins. Co. of America v. Graybar Elec. Co., 59 So.3d 649, 655 (Ala.2010). Section 35-11-210 does not apply, however, to public property. Id. Thus, in what is commonly called Alabama’s “little Miller Act,” Ala.Code 1975, § 39-1-1 et seq., the legislature has required contractors involved in public-works projects to obtain certain bonds to protect those who provide labor and materials on those projects.
Specifically, § 39-l-l(a) requires that any person entering into a contract with a governmental entity[6] to build any “public works” shall execute what is described in § 39 — 1—1(b) as a “payment bond.” Such a bond must be “payable to the awarding authority” and must “be executed in an amount not less than 50 percent of the contract price.” § 39-1-1 (a). The scope of this bond, i.e., what the Code section states that the bond must cover, is defined as follows: the bond shall contain “the obligation that the contractor or contractors shall promptly make payments to all persons supplying labor, materials, or supplies for or in the prosecution of the work provided in the contract....” § 39-1-1 (a).
Section 39 — 1—1(b) allows persons who have “furnished labor, materials, or supplies for or in the prosecution of a public work,” but who have not been paid, to file a civil action. Such an action provides those persons a means to have adjudicated any rights or claims they might have under the payment bond: “Any person that has furnished labor, materials, or supplies for or in the prosecution of a public work and payment has not been made may institute a civil action upon the payment bond and have their rights and claims adjudicated in a civil action and judgment entered thereon.”
The majority opinion focuses on whether JCI provided equipment and materials for the public-works project; specifically, the opinion states that § 39-l-l(b) “focuses *269 exclusively on the intent” for which the equipment and materials were provided and quotes the following from § 39 — 1—1(b): “ ‘Any person that has furnished labor, materials, or supplies for or in the prosecution of a public work ... may institute a civil action upon the payment bond....’” 160 So.3d at 252 (omissions in the majority opinion). If that is all the Code section stated, the majority opinion might have a point. But the majority omits controlling language. As quoted fully above, the Code section states: “Any person that has furnished labor, materials, or supplies for or in the prosecution of a public work and payment has not been made may institute a civil action upon the payment bond and have their rights and claims adjudicated in a civil action and judgment entered thereon.” (Emphasis added.) The action one files under § 39-1-1 (b) is to determine one’s rights and claims upon the payment bond. Such “rights and claims” are spelled out in § 39-l-l(a); specifically, as noted above, the payment bond obligates the contractor to pay persons supplying “labor, materials, or supplies” for “the work provided in the contract,” not simply for “labor, materials, or supplies” provided to the public-works project. § 39-l-l(a) (emphasis added).[7]
The majority opinion, by omitting pertinent language, rewrites the Code section to provide that persons are entitled to payment under the bond simply because they have provided “labor, materials, or supplies” to a public-works project in any way. By focusing on whether the equipment and supplies are used in the project, and not on whether the equipment and supplies were used for “the work provided in the contract” for the project, any expense for the project is covered, even if the expense is outside the contract. The majority opinion holds that the contractor’s bond must cover everything, even things beyond the scope of the terms of the contract. This is not what the Code section states.
Under the facts of the instant case, the “work provided in the contract” between the general contractor, Batson-Cook Company (“Batson-Cook”), and Roanoke Healthcare called for Batson-Cook to purchase materials and to provide labor for the renovation project.[8] However, the contract also recognized that Roanoke Healthcare was a tax-exempt entity that could purchase materials without paying sales taxes. Thus, to “avoid” those taxes, the contract indicated that the parties would enter into what it termed a “Purchasing Agent Agreement” (“PAA”). Roanoke Healthcare would actually purchase “all, or a portion of,” the “materials, supplies, equipment, and other items” for the project. Batson-Cook would act as Roanoke Healthcare’s “agent” for those purchases. See paragraphs a. and d. of the PAA, quoted in the main opinion. 160 So.3d at 251. Under the PAA, the cost of items purchased by Roanoke Healthcare is deducted from the overall total amount due Batson-Cook under the contract; thus, the purchases made by Roanoke Healthcare are removed from the “work provided in the contract.” See id., paragraph i. Bat-son-Cook did not purchase JCI’s equip- *270 merit and materials (it did not perform that “work”) and was not, and would not be, paid for the purchase of the equipment and materials (it would not be paid for that “work”), and the purchase of the JCI equipment and materials was to be removed from the contract (that “work” was removed from the contract). Although the JCI equipment and materials were certainly used for the public-works project, § 89-l-l(a) focuses on “the work provided in the contract,” not all work provided for the public-works project. I cannot conclude that Roanoke Healthcare’s separate purchase of the JCI equipment and materials was “work provided in the contract” and was covered by Batson-Cook’s payment bond.[9]
JCI also argues that the trial court’s decision violates “public policy” intended by the “little Miller Act,” namely, to “ensure that a materialman receives full payment for labor or materials that he supplies to a public works project.” SGB Constr. Servs., Inc. v. Ray Sumlin Constr. Co., 644 So.2d 892, 895 (Ala.1994). However, the legislature “has the exclusive domain to formulate public policy in Alabama” and has done so through the text of § 39-1-1. Boles v. Parris, 952 So.2d 364, 367 (Ala.2006). The text of § 39-1-1 does not provide for JCI under the payment bond.
The majority holds that we should “construe § 39-1-1 so as to effectuate the purpose for which it was enacted.” 160 So.3d at 262. However,
“! “[w]ords used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.” ’ ”
DeKalb Cnty. LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270, 275 (Ala.1998) (quoting Blue Cross & Blue Shield v. Nielsen, 714 So.2d 293, 296 (Ala.1998), quoting in turn IMED Corp. v. Systems Eng’g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992)). We “construe” a statute only when it is ambiguous; if the statute is unambiguous, then there is no room for the courts to do anything other than to give effect to the plain language of the Code section: “When the language of a statute is plain and unambiguous, as in this case, courts must enforce the statute as written by giving the words of the statute their ordinary plain meaning — they must interpret that language to mean exactly what it says_” Ex parte T.B., 698 So.2d 127, *271 130 (Ala.1997). Here, the majority opinion fails to give effect to all the language of § 39-1-1, thus altering the actual wording of the Code section to achieve a reading in conformity with its “purpose.” The legislature chose the words of § 39-1-1 to effectuate the purpose it intended; we cannot change those words to say what we believe the legislature actually intended to say. To do so would “turn this Court into a legislative body, and doing that, of course, would be utterly inconsistent with the doctrine of separation of powers.” DeKalb County, 729 So.2d at 276.
The statutory scheme set forth by the little Miller Act protects the property owner from claims by persons who have supplied “labor, materials, or supplies” but who have not been paid by the contractor. Thus, the payment bond is “payable to the awarding authority” and contains the “obligation that the contractor or contractors shall promptly make payments” to those persons. § 39-l-l(a). In this case, the payment bond was payable to Roanoke Healthcare, and Roanoke Healthcare could call upon the bond to pay the debts Bat-son-Cook — the “contractor” — accumulated for the project but failed to pay. Here, Batson-Cook did not buy JCI’s materials and equipment, and the price for the materials and equipment was removed from the contract. Batson-Cook was not to be paid by Roanoke Healthcare to buy JCI’s materials and equipment and is not the party obligated to pay JCI. The effect of the majority opinion, however, is that Batson-Cook is now responsible to pay for materials and equipment Roanoke Healthcare purchased and, under the contract for the project, for which Batson-Cook would not be paid in the first place. The majority holds that the payment bond stands good for the debts of the awarding authority, even though the Code section calls for the bond to stand good for the debts of the contractor.
JCI seeks, under § 39 — 1—1(b), to have its “rights and claims adjudicated” “upon the payment bond.” Because the purchase of the equipment and materials was not “work provided in the contract,” JCI has no right or claim under the payment bond. I would affirm the trial court’s summary judgment for Liberty Mutual Insurance Company.

. Such governmental entities are referred to as "awarding authorities” and are more specifically defined in Ala.Code 1975, § 39-2-1(1). There appears no dispute in this case that Roanoke Healthcare is an "awarding authority.”

. Section 39 — 1—1(b) has broad language allowing "any person" providing materials to a public-works project to file an action under the “payment bond”; however, it is clear that it does not allow "any person” to recover under the bond. Instead, the action determines only the rights and claims of the plaintiff under that bond.

. Batson-Cook purchased a payment bond from Liberty Mutual Insurance Company ("Liberty Mutual”). There is evidence in the record suggesting that Batson-Cook is required to indemnify Liberty Mutual for any claims made under the payment bond.

. JCI suggests that there is an issue of fact as to whether the purchase was outside the scope of the contract, specifically, whether JCI understood that it was selling directly to Roanoke Healthcare or directly to Batson-Cook’s subcontractor, Hardy Corporation ("Hardy”). I disagree that there is a question of fact regarding to whom JCI sold the equipment and materials. Numerous items of documentary evidence and testimony show that the terms of the PAA were communicated to JCI. Hardy’s agent, Ronnie Vines, twice told JCI that Roanoke Healthcare, and not Bat-son-Cook or Hardy, was buying the equipment and materials and that invoices should show Roanoke Healthcare as the buyer. JCI twice received e-mails stating this and twice received a letter from the Alabama Department of Revenue stating that Roanoke Healthcare was a tax-exempt entity. Further, after the sale, JCI sent an e-mail to Hardy inquiring as to how to bill Roanoke Healthcare. But the most important fact showing that JCI knew that it was selling the equipment and materials to Roanoke Healthcare is the fact that JCI charged no sales tax. Who did JCI think the purchaser was, other than the only tax-exempt entity in this case? I see no issue of fact.